UNITED STATES of America, Appellee,

v.

Eric John THOMPSON, Appellant.

UNITED STATES of America, Appellee,

v.

Tammy Ann LEAVOY, Appellant.

Nos. 88–5092, 88–5093.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1989.

Decided Jan. 30, 1989.

Rehearing Denied in No. 88–5092 March 10, 1989.

Jonathan E. Fruchtman, Minneapolis, Minn., for Thompson.

James H. Ranum, Minneapolis, Minn., for Leavoy.

Douglas Peterson, Asst. U.S. Atty., Minneapolis, Minn., for U.S.

Before LAY, Chief Judge, GIBSON, Circuit Judge, and NICHOL,* Senior District Judge.

NICHOL, Senior District Judge

On November 24, 1987, a jury convicted Eric John Thompson and Tammy Ann Leavoy for offenses relating to armed bank robbery.[1] Thompson was convicted on four counts in violation of 18 U.S.C. §§ 2113(a), 2113(d), 2(a), 924(c), 922(g), 924(a)(1)(B) and 2312. Leavoy was convicted on one count in violation of 18 U.S.C. § 2113. Both defendants appeal.

Thompson argues that his motion to suppress post-arrest statements was improperly denied.[2] He also challenges the district court's removal of a juror. Leavoy argues that her case should have been dismissed because the seventy-day period of the Speedy Trial Act elapsed. Having considered these consolidated appeals, we affirm both convictions.

On the morning of June 8, 1987, Eric John Thompson and Tammy Ann Leavoy worked as a team to rob the Eastwood State Bank in Eyota, Minnesota. Thompson entered the bank, was led into a bank employee's office, put on a nylon stocking mask, drew a gun and announced the robbery. -Thompson absconded with $19,615.

He met Leavoy who had been waiting with a stolen mini-van parked behind the bank.[3] Leavoy had earlier "cased" the bank for Thompson by entering the bank under the pretense of exchanging small

---

* THE HONORABLE FRED J. NICHOL, Senior District Judge, For the District of South Dakota, sitting by designation.

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, presiding.

2. Pretrial motions were heard before the Honorable Bernard P. Becker, United States Magistrate for the District of Minnesota. Magistrate Becker, after a preliminary hearing, recommended denial of Thompson's suppression motion. The district court accepted the magistrate's recommendation.

3. The mini-van had been stolen sometime between May 22 and May 25 by Thompson from his former employer in Missouri.

bills for large bills. During the robbery, witnesses observed Leavoy pacing nervously beside the getaway mini-van.

Later that evening law enforcement officers located the getaway mini-van behind a hotel in Rochester, Minnesota. After a high speed chase that ended in a crowded shopping mall at 8:30 p.m., Thompson and Leavoy were arrested and read their *Miranda* warnings.

### THOMPSON'S APPEAL

#### 1. *Facts*

Upon receiving the *Miranda* warnings from FBI Agent Price, Thompson stated that he understood his rights. When asked if he was hurt, Thompson replied no. Thompson asked that the handcuffs be loosened, which they were. Thompson stated that prior to talking to anyone, he would "sleep on it" before he was interviewed and would talk "tomorrow." Agent Price then asked, "Where are you from?" Thompson replied that he was from Missouri and volunteered the statement "I'll wait a little while before I'm interviewed." Agent Price terminated all questioning at this point.

Thompson was taken to the Law Enforcement Center (LEC) in Rochester where he was interviewed again shortly after 9:00 p.m. Before the interview began, Thompson was given a "Statement of *Miranda* Rights" form by Agent Price. Thompson read the statement aloud, stated he understood his rights and knew from prior time at a penitentiary that his statements could be used against him. At 9:10 p.m. Thompson signed and dated a waiver of rights form.

In the ensuing interview, Thompson provided a signed statement incriminating himself in the armed robbery. He also signed a consent form authorizing the search of a hotel room. Two subsequent interviews were conducted the same evening. Before each interview Thompson was advised of his constitutional rights and signed a waiver of rights form. Thompson never asked to stop any of the interviews, nor did he ask for counsel.

Agent Price assessed Thompson's demeanor during the course of the evening as "very serious, relaxed, thoughtful." Thompson did not appear to be hurt or disoriented and did appear to be sober. However, Thompson indicated he had taken 30 dilaudid pills earlier that day after initially stating he was not under the influence of drugs or alcohol. No threats or promises were made to induce a statement.

Thompson's jury trial began on November 12, 1987. The trial was delayed at Thompson's request and resumed on November 19th. After the close of evidence and prior to closing arguments a juror approached the judge and expressed his personal discomfort about sitting on the jury. The juror was a Vietnam veteran as was Thompson. The juror indicated in chambers to the judge and counsel for both sides his sympathy for Thompson and the personal difficulties he was having viewing the evidence objectively. As a result, the judge removed the juror, who expressed relief, without any objection from counsel and replaced him with an alternate. The jury convicted Thompson on November 24, 1987.

#### 2. *Assertion of the Right to Remain Silent*

The first issue is whether Thompson effectively asserted his right to remain silent during the initial conversation with Agent Price when the defendant said he would sleep on it and would talk tomorrow, then later said "I'll wait a little while before I'm interviewed." Thompson does not challenge the sufficiency of the *Miranda* warnings given by Agent Price, or the voluntariness of the statements made at the LEC. Instead, Thompson argues that he asserted his right to remain silent during the initial conversation with Agent Price, and once there is an assertion of the right to remain silent it must be scrupulously honored. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Thompson further contends that Agent Price did not scrupulously honor his right to remain silent, and thus his incriminating statements at the LEC are inadmissible. We disagree

and find that Thompson did not assert his right to remain silent under *Miranda* sufficient to trigger the application of *Michigan v. Mosley.*

The Supreme Court announced in *Miranda v. Arizona,* 384 U.S. 436, 473, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966), that "[i]f the individual indicates in any manner, at any time prior to or during questioning that he wishes to remain silent, the interrogation must cease." The Court further clarified this rule by explaining in *Michigan v. Mosley* that "the admissibility of statements obtained *after the person in custody has decided* to remain silent depends under *Miranda* on whether his right to cut off questioning was 'scrupulously honored.'" 96 S.Ct. at 326 [emphasis added].

Before we embark on an analysis of whether Thompson's right to remain silent was scrupulously honored, we must first determine whether he made a decision to remain silent as prescribed in *Miranda* and *Mosley.* To determine whether Thompson asserted his right to remain silent we focus on the statements made by Thompson immediately after receiving *Miranda* warnings and prior to interrogation at the LEC.

■ The first statement made by Thompson upon receiving the *Miranda* warnings was that he would "sleep on it" before being interviewed and would talk "tomorrow." The parties disagree on whether this statement, standing alone, is a sufficient assertion of the right to remain silent. This disagreement is immaterial because in deciding if the right to remain silent was asserted we must consider all that Thompson said after the warnings were given. This includes taking into account Thompson's final "I'll wait a little while ..." statement at the scene of the arrest. Under the circumstances of this case, we find Thompson's latter comment, "I'll wait a little while before I'm interviewed," volunteered after responding to Agent Price's request for routine personal information, constitutes an effective rever-

sal of Thompson's prior request to defer questioning until "tomorrow." Thus, any decision to remain silent, if it was made at all, was subsequently reversed.

■ The actions of Agent Price were respectful of the rights of the defendant. There is nothing in the record that suggests Agent Price employed persistent efforts or trickery to wear down the defendant's resistance and make him change his mind. *Compare Mosley,* 96 S.Ct. at 327; *Jackson v. Wyrick,* 730 F.2d 1177, 1180 (8th Cir.1984), *cert. denied* 469 U.S. 849, 105 S.Ct. 167, 83 L.Ed.2d 102 (1984); *Lindsay v. U.S.,* 542 F.2d 755, 757 (8th Cir. 1976); *U.S. v. Hernandez,* 574 F.2d 1362, 1370 (5th Cir.1978). Agent Price did ask the defendant "Where are you from?" after Thompson stated he would sleep on it and would talk tomorrow. However, this is not fatal because the question related to only routine personal identification information which is permissible. *U.S. v. Turner,* 565 F.2d 539, 541 (8th Cir.1977). When Thompson volunteered the "I'll wait a little while ..." statement, the agent ceased questioning altogether.

■ Questioning did not resume until approximately one-half hour later at the LEC. Prior to the start of questioning, Thompson read aloud a fresh set of *Miranda* warnings, indicated he understood them and signed a waiver of rights form. If Thompson wished to invoke his right to remain silent, he could have done so here. Instead, after the passage of a little while from the time of his initial statements upon arrest, he chose to make a statement after being fully advised of and voluntarily waiving his constitutional right to remain silent. The subsequent signing of the waiver at the LEC provides additional evidence that Thompson reversed his prior request to defer questioning until "tomorrow." *Cf. Lindsay v. U.S., supra* at 757.[4] Thompson's "very serious, relaxed, thoughtful" demeanor, his prior experience with the

4. Thompson makes no challenge as to the voluntariness of this waiver, thus we need not consider it.

criminal justice system [5] and his signing of the consent to search form provides further proof that he was capable of and did make an informed and intelligent decision to talk.

The statements made by Thompson do not represent a clear, consistent expression of a desire to remain silent. *But Cf. Michigan v. Mosley*, 96 S.Ct. at 323 (the defendant unequivocally stated he did not want to answer any more questions); *U.S. v. Hernandez, supra* at 1365 (the defendant repeatedly declined to speak invoking his right to remain silent on numerous occasions); *U.S. v. Finch*, 557 F.2d 1234, 1235 (8th Cir.1977), *cert. denied* 434 U.S. 927, 98 S.Ct. 409, 54 L.Ed.2d 285 (1977) (the defendant unequivocally refused to make a statement). We cannot find that the statements taken as a whole indicate a decision to invoke the right to remain silent. Accordingly, there is no need to address the "scrupulously honored" test of *Michigan v. Mosley*. On this basis, the subsequent agent-initiated conversations did not contravene the defendant's constitutional rights.

■ Finally, Thompson argues it is improper to analyze the scope of his statements regardless of the circumstances. However, he fails to cite any authority to support his contention. In *Mosley*, 96 S.Ct. at 327, footnote 11, the scope of the defendant's statements were taken into consideration by the Court. Furthermore, the Supreme Court explicitly rejected the idea that any assertion of the right to remain silent should foreclose further questioning. *Id.* at 325–326. To prohibit our analysis of the scope of the defendant's statement would mean that any ambiguous, equivocal or dubious assertion of the right to remain silent would foreclose further questioning in direct contradiction of the rule in *Mosley. Id.*

### 3. *Dismissal of the Juror*

■ On November 24, 1987, during Thompson's trial at the close of evidence but prior to final arguments, a juror notified the judge that he had some personal concerns regarding the trial. Because of these concerns, the judge exercised her discretion under FED.R.CRIM.P. 24(c) to remove the juror and replace him with an alternate. It is not necessary to detail the circumstances of the juror's personal concern nor review the exercise of the judge's discretion because the defendant failed to object to the removal of the juror. Accordingly, the issue was not properly preserved for appeal. FED.R.EVID. 103; see *U.S. v. Udey*, 748 F.2d 1231, 1240 (8th Cir.1984), *cert. denied* 472 U.S. 1017, 105 S.Ct. 3478, 87 L.Ed.2d 613 (1985); *U.S. v. Vitale*, 728 F.2d 1090, 1092 (8th Cir.1984); *U.S. v. Wagoner*, 713 F.2d 1371, 1376 (8th Cir.1983). "Furthermore, we cannot say that appellant's claim amounts to plain error under FED.R.CRIM.P. 52(b)." *U.S. v. Davis*, 785 F.2d 610, 618 (8th Cir.1986); *U.S. v. Udey, supra; U.S. v. Poston*, 727 F.2d 734, 740 (8th Cir.1984), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984).

### LEAVOY'S APPEAL

Leavoy argues that she was deprived of her right to a speedy trial because a trial was not held within seventy days of the filing of the indictment as guaranteed by the Speedy Trial Act, Title 18 U.S.C. §§ 3161–3171. Leavoy was indicted on July 7, 1987, and her jury trial commenced on November 12, 1987, 128 calendar days later.

The Speedy Trial Act provides that a defendant shall be brought to trial within seventy days of his indictment or arraignment, whichever last occurred. 18 U.S.C. § 3161(c)(1). The seventy-day period may be tolled, however, for a variety of reasons provided by the act, including a delay occasioned by the filing, consideration, hearing and disposition of any pretrial motion ... 18 U.S.C. §§ 3161(h)(1)(F) and 3161(h)(1)(A).

*U.S. v. Jones*, 801 F.2d 304, 316 (8th Cir. 1986).

---

5. The briefs submitted by the parties do not list Thompson's prior criminal record. However, Thompson indicated in an interview with Agent Price that he had prior experience with the criminal justice system through time served in a penitentiary.

■ Here, Leavoy and her co-defendant Thompson filed numerous pretrial motions throughout the months of July and November. The bulk of pretrial motions concerned co-defendant Thompson's contemplated use of expert testimony relating to a mental condition bearing upon the issue of his guilt and the government's request for mental examinations. These delays are excludable under 18 U.S.C. § 3161(h)(8)(A) and (B). Furthermore, this excludable period applied to both Leavoy and Thompson "because a time exclusion applicable to one defendant applies to all co-defendants." *U.S. v. Jones, supra* at 316.[6] The parties disagree on the actual number of excludable days. However, this disagreement is unimportant given the narrow focus of Leavoy's challenge.

■ Leavoy contends that the time it takes the district court to rule on a speedy trial motion made by a defendant held without bail should be treated as nonexcludable time from the Speedy Trial Act timetable. As a result, Leavoy argues the 21 days it took for the district court to consider her motion to dismiss should be added to the Speedy Trial Act timetable as nonexcludable time.[7] We disagree and reject Leavoy's argument that her right to a speedy trial has been violated for two reasons.

First, no authority supports Leavoy's theory that the time taken by the district court to rule on the motion to dismiss for violation of the Speedy Trial Act is nonexcludable. The explicit language of § 3161(h)(1)(F) excludes the period during the pendency of "any motion"—which embodies the motion to dismiss for violation of the Speedy Trial Act. *U.S. v. Stafford*, 697 F.2d 1368, 1372 (11th Cir.1983). "A motion to dismiss—regardless of the grounds upon which it is based—is a motion like any other motion, and thus falls within the express exclusion of (F)." *Id.* Nothing in

the Act's legislative history supports a deviation from this explicit language. *See generally U.S. v. Brim*, 630 F.2d 1307, 1312 (8th Cir.1980); (the court held that the "any pretrial motion" exclusion is to be given a flexible application and liberal interpretation as intended by Congress which means the time associated with any pretrial motion is excluded), *cert. denied* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981). The purpose for this liberal interpretation is best stated in *U.S. v. Bolden*, 700 F.2d 102, 103 (2nd Cir.1983);

> [B]y establishing in the Speedy Trial Act automatically excludable periods for pretrial motions, Congress assured reasonable opportunities to the government for response, as well as to the court for serious consideration of every claim that a defendant might assert by motion. An opportunity to be heard and due deliberation are as necessary for a speedy trial motion as for any other motion.

Furthermore, Leavoy's argument is in direct contradiction to the reported cases. *See, U.S. v. Bolden, supra; Furlow v. U.S.*, 644 F.2d 764, 768 (9th Cir.1981), *cert. denied*, 454 U.S. 871, 102 S.Ct. 340, 70 L.Ed.2d 175 (1981); *U.S. v. Brown*, 736 F.2d 807, 809 (1st Cir.1984), *later appealed on related grounds*, 770 F.2d 241, *cert. denied* 474 U.S. 1064, 106 S.Ct. 816, 88 L.Ed.2d 789 (1986); *U.S. v. Tedesco*, 726 F.2d 1216, 1221 (2nd Cir.1984); *U.S. v. Stafford, supra; U.S. v. Arkus*, 675 F.2d 245 (9th Cir.1982); *U.S. v. Van Brandy*, 726 F.2d 548, 550 (9th Cir.), *cert. denied*, 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 79 (1984).

Leavoy also argues that a distinguishing consideration is the fact she was held without bail while awaiting trial. However, neither the Act, the legislative history, nor the authorities cited above make such a distinction. We decline to do so as well.

---

**6.** These exclusions are not contested by Leavoy.

**7.** The basis for this contention is as follows: On September 24, 1987, Leavoy filed a motion to dismiss for violation of the Speedy Trial Act. Five days later on September 29, 1987, the district court denied the motion. On October 21, 1987, Leavoy filed a second motion to dismiss

for violation of the Speedy Trial Act. Sixteen days later on November 6, 1987, the district court denied Leavoy's motion. Twenty-one additional nonexcludable days, plus the 52 nonexcludable days Leavoy contends has already passed equals the trial commencing on the 73rd day.

Finally, Leavoy miscalculates the number of nonexcludable days that elapsed in her case. However, we are relieved from engaging in a complex analysis of what the correct number of elapsed nonexcludable days might be given our holding above. Leavoy concedes that not counting the days it took the district court to rule on the speedy trial motions, her trial commenced on the 52nd day. That number has not changed by our holding in this case. Accordingly, Leavoy was brought to trial well within the seventy-day period required by the Speedy Trial Act.

We have considered all the arguments and find no error.

AFFIRMED.