**UNITED STATES of America,
Plaintiff,**

v.

**Andre Lamar PLUMMER, Defendant.**

No. CR00–4068–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Oct. 26, 2000.

program benefits, even if they will not lose any *past* benefits.

946

Jamie D. Bowers, Asst. U.S. Atty., Des Moines, IA, for U.S.

Martha A. McMinn, Sioux City, IA, for Andre Lamar Plummer.

## ORDER REGARDING DEFENDANT'S MOTION TO SUPPRESS

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION AND BACKGROUND* ................................... 947

II. *FINDINGS OF FACT* ................................................ 948

III. *LEGAL ANALYSIS* ................................................. 950

 A. *Miranda Warnings* ............................................. 950
 B. *Waiver Of Rights* ............................................. 951

IV. *CONCLUSION* ..................................................... 954

This motion to suppress reminds the court of one of Akira Kurosawa's classic films, RASHOMON, where the director takes an apparently simple story and complicates it by filtering it through the perceptions of four different witnesses. Here, four state law enforcement officers work-

ing with the Tri–State Drug Task Force testified to four slightly altered versions of the events surrounding the defendant's being informed of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), while the defendant provided the court with a contrasting account. Resolution of this factual conflict, indeed the entirety of the motion to suppress, would be unnecessary if the officers had videotaped or otherwise recorded their interaction with the defendant. The interview room where the questioning took place had videotaping capability.[1] Their failure to videotape the events surrounding the interrogation of the defendant was done pursuant to an edict of the United States Drug Enforcement Agency which proscribes its officers from recording the questioning of suspects.

The importance of videotaping or otherwise recording interrogations, however, can hardly be deemed a new topic in this circuit. In the United States District Court for the District of South Dakota, Judge Charles B. Kornmann has made numerous suggestions to federal law enforcement agencies that they videotape or otherwise record interviews. *See United States v. Azure,* CR99–30077, at *1, 1999 WL 33218402 (D.S.D. Oct. 19, 1999). Federal law enforcement agencies, however, have apparently ignored Judge Kornmann's admonition to adopt a policy of videotaping or otherwise recording interviews. In the face of the government's refusal to videotape or otherwise record questioning of suspects, Judge Kornmann has instituted the following procedure:

> In all future cases in the Northern and Central Divisions of the District of South Dakota in which statements taken after November 1, 1999, are not tape or video recorded and there is no good

reason why the taping or recording was not done and there is disagreement over what was said, this Court intends to advise juries of exactly what is set forth in this Order and explain to the jury that F.B.I. agents continue to refuse to follow the suggestions of Chief Judge Piersol and the presiding judge in the Northern and Central Divisions of the District of South Dakota and why, in the opinion of the court, they refuse to follow such suggestions. The prosecutor will also not be allowed to question defendants about 302's in the absence of a cautionary instruction and explanation by the Court to the jury. Fair warning has now been provided and it is expected that the United States Attorney will communicate all of this to the Federal Bureau of Investigation so that they can decide what to do in the future.

*Azure,* at *2. The continued failure of federal law enforcement agencies to adopt a policy of videotaping or otherwise recording interviews leads invariably to the proliferation of motions such as the one currently pending before the court. The court, therefore, is considering adopting policies similar to those implemented by Judge Kornmann in *Azure.*

### I. INTRODUCTION AND BACKGROUND

In a two-count indictment returned on July 28, 2000, defendant Andre Lamar Plummer is charged with possessing 256 grams of cocaine with the intent to manufacture 50 or more grams of mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A), and with possessing 256 grams of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). On September 20, 2000, defendant Plummer filed a

---

1. Indeed, one of the officers who was conducting the interview, Officer Pat Cheshier, testified that he had previously conducted videotaping of interrogations. Thus, the officers had both access to videotaping equipment and the knowledge and experience to operate

it if they had chosen to do so. The only reason the officers elected to not videotape their questioning of defendant Plummer is the DEA's policy against videotaping or otherwise recording interrogations.

motion to suppress statements obtained from him as a result of a custodial interrogation which occurred after his arrest on March 12, 1999(# 14). Defendant Plummer has moved to suppress statements made to law enforcement officers on March 12, 1999, on the grounds that his statements were involuntary and were obtained without his having been informed of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant Plummer requested an evidentiary hearing on his motion to suppress. Defendant Plummer's request for an evidentiary hearing was granted.

The United States timely resisted defendant Plummer's motion. The government argues that the police informed defendant Plummer of his rights as required by the *Miranda* decision and that defendant Plummer's statements were voluntary.

An evidentiary hearing on defendant Plummer's motion was held on October 18, 2000, at which the United States presented the testimony of current and former Tri-State Drug Task Force officers Bob Johnson, Mike Van Beest, Patrick Cheshier, and Richard Dail Fellin. Defendant offered his own testimony. The United States was represented by Assistant United States Attorney Jamie D. Bowers. Defendant Plummer was represented by Martha M. McMinn, Sioux City, Iowa. At the close of the evidentiary hearing the court indicated to the parties that it would permit them to file supplemental authorities on the issue of whether defendant Plummer, upon being informed of his constitutional rights, had invoked his right to counsel or his right to remain silent. Defendant Plummer subsequently submitted supplemental legal authorities in support of his respective position. No additional legal authorities were submitted by the government.

## II. FINDINGS OF FACT

For the purpose of these motions only, the court finds the following facts:

On March 12, 1999, law enforcement officers of the Tri-State Drug Task Force were conducting surveillance on a Louis Chavez in the Walgreen Drug parking lot in downtown Sioux City, Iowa. Defendant Plummer was observed meeting with Chavez. However, when defendant Plummer recognized Tri-State Drug Task Force Officer Cheshier, with whom Plummer had previous run ins, he left the parking lot in his automobile at a high rate of speed. He was pursued by Officer Cheshier. Officer Cheshier observed defendant Plummer committing numerous traffic violations as he tried to elude the police. After abandoning his automobile at Marian Health Center parking lot, defendant Plummer was located at a relative's house on Seventh Street and arrested without incident. He was then transported to the Sioux City Police Station for questioning.

At the Sioux City Police Department, defendant Plummer was placed in an interview room. The interview room is approximately fifteen feet by ten feet with several chairs and a desk. The room has no two-way mirror but does have the capacity for audio and video monitoring. The room also has videotaping capabilities but no videotaping occurred here pursuant to the United States Drug Enforcement Agency's ("DEA") policy of not recording or videotaping interrogations.[2] Defendant Plum-

---

**2.** Officer Cheshier testified at the evidentiary hearing that it was his understanding that the reason underlying the DEA's policy for not videotaping interrogations was to preserve uniformity in the evidence of all interrogations. As explained by Officer Cheshier, the DEA believes that because not all questioning that occurs in the field can be recorded or videotaped then no interrogations should be videotaped. This explanation is at least suspicious and at worst ludicrous. The court notes that Iowa State Troopers have videotape recorders in their patrol cars and the capacity to make audio recordings of conversations that occur in those patrol cars. Moreover, small audio tape recorders have been widely available for a great many years and small hand held videotape recorders are now avail-

mer was advised of his constitutional rights, as required under *Miranda,* using a written rights advisory form.[3] Officers Cheshier, Van Beest and Johnson were present in the interview room.[4] Defendant Plummer was asked to sign a waiver of rights located on the bottom of the rights advisory form. Defendant Plummer refused to sign the waiver. He then told the officers that he did not wish to waive his rights.

The officers, nonplussed by defendant Plummer's declaration, left the interview room and Officer Van Beest telephoned Assistant United States Attorney Peter Deegan and requested instructions on

able. Indeed, State law enforcement officers have previously testified before this court about their ability to record statements. There is simply no good reason why DEA agents could not make audio or video recordings of virtually all interrogations that occur. Even if occasionally a law enforcement officer in the field were unable to record his or her questioning of a suspect because of environmental factors or mechanical malfunctions, this does not support the officer's failure to record statements under the conditions which existed here. Indeed, Officer Fellin actually used the audio video monitor in the interview room here to watch portions of the interrogation but simply elected not to use it to record the interrogation. Thus, left with no rational explanation for the DEA's policy against videotaping or recording of interrogations, the court is left with the inescapable conclusion that DEA's offered reason for not videotaping or recording statements is totally pretextual.

3. There is a conflict in the testimony as to which officer actually advised Plummer of his rights. Officer Cheshier testified that he took out a copy of the written rights advisory form and went through it with defendant Plummer. Officers Johnson and Fellin, on the other hand, testified that Van Beest read the advisory form to defendant Plummer. Officer Van Beest testified that while he was the one who obtained the written rights advisory form and went over it with defendant Plummer, defendant Cheshier assisted him in the process. Resolution of this conflict in the officers' testimony, however, is unnecessary for determination of defendant Plummer's motion. A copy of the written rights advisory form was introduced at the evidentiary hearing as Government Exhibit 2. The form provides:

**WARNING STATEMENT TO A PERSON IN CUSTODY**

Before you answer any questions or make any statements you are advised of your legal and Constitutional Rights as follows:

1. You have the right to remain absolutely silent and you are not required to make a statement of any kind, say or admit anything or incriminate yourself in any manner.

2. You are warned that anything you may say, or any statement you make, can and will be used against you as evidence in court, including evidence in a criminal prosecution against you for the alleged commission of a crime.

3. You have the right to use a telephone to call an attorney of your own choice or a member of your family and to see and consult with an attorney or member of your own family.

4. You also have the right to have an attorney present here to consult with you and advise you of your rights and to represent you here at this time and to be present during all of the time you are being questioned. You may retain or employ your own attorney, but if you are indigent and cannot afford an attorney or do not have money or funds with which to employ an attorney, then the court will appoint one for you at no expense to you.

5. If you consent to be questioned, then at any time during questioning you have the right to stop answering questions and ask for any attorney to be present in your behalf.

\*\*\*\*

**WAIVER OF RIGHTS**

I have read the above Warning Statement advising me of my legal and Constitutional Rights and I understand what my Rights are. I have been given the opportunity to use a telephone to call an attorney or a member of my own family. I am willing to answer questions and make a Statement. I do this voluntarily and of my own free will. I understand and know what I am doing. I do not want to call or consult with a lawyer and I do not want a lawyer to be present to advise me of my rights and with whom I can consult. No promises of immunity or other promises of any kind have been made to me and no physical force or pressure of any kind has been used against me to cause me to make a Statement.

Gov't Ex. 2.

4. Officer Fellin, whose role was to take notes of what transpired, testified that he was sometimes in the interview room and at other times he was watching and listening to what was · said in the interview room through a video monitor.

whether they could proceed to interview defendant Plummer. Deegan said he would look into it and requested that Van Beest call him back shortly. When Van Beest called Deegan back he was instructed that the officers could proceed with the interview. The officers then returned to the interview room and began reviewing the events of the day with defendant Plummer. Defendant was told that his cooperation would be reported to the United States Attorney. The interview was conducted in normal conversational tones in a relaxed atmosphere. The officers made no threats or promises nor did they engage in any intimidation, shouting, or threatening gestures. Defendant Plummer subsequently made statements to the officers which implicated himself in drug trafficking.

## III. LEGAL ANALYSIS

### A. Miranda Warnings

Defendant Plummer challenges the admissibility of all of the statements he made to law enforcement officers on March 12, 1999, on the ground that he was not informed of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

 In order to protect the right granted by the Fifth Amendment that "[n]o person ... shall be compelled in any criminal case to be a witness against himself," the United States Supreme Court in *Miranda* adopted prophylactic procedural rules that must be followed during custodial interrogations. *Id.* at 444, 86 S.Ct. 1602. The Court held that a suspect in custody "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* In general, any statements elicited from a suspect in violation of these rules are inadmissible in the prosecution's case-in-chief. *See Stansbury v.*

*California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam). The *Miranda* doctrine is premised on the assumption that the interaction of custody and police interrogation results in a danger of coercion. *Illinois v. Perkins,* 496 U.S. 292, 296, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). "Fidelity to the doctrine announced in Miranda requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." *Berkemer v. McCarty,* 468 U.S. 420, 437, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The procedural safeguards prescribed by *Miranda* only apply "where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam). A person is "in custody" for purposes of Miranda if the person has been arrested or if his freedom of action has been curtailed to a degree associated with arrest. *See Stansbury,* 511 U.S. at 322, 114 S.Ct. 1526. The proper perspective for determining whether a suspect is "in custody" at the time of questioning is whether "a reasonable [person] in the suspect's position would have understood his situation ... as the functional equivalent of formal arrest." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

 Here, applying these principles, it is clear that defendant Plummer was "in custody" at the time he was brought to the interview room at the Sioux City Police Department. Defendant Plummer therefore was entitled to *Miranda* warnings before he was subjected to interrogation. Although defendant Plummer testified at the evidentiary hearing that he was questioned by officers before being shown the written rights advisory form, the court concludes as a factual matter that defendant Plummer was advised of his rights before any questioning occurred.[5] Therefore, this aspect of defendant Plummer's Motion To Suppress is denied.

---

5. In assessing the credibility of the testimony of defendant Plummer, as well as officers

Cheshier, Van Beest, Fellin, and Johnson, at the evidentiary hearing, the court has consid-

## B. Waiver Of Rights

Although the court has concluded that defendant Plummer was advised of his constitutional rights, as required under *Miranda,* this conclusion does not end the court's analysis. The United States Supreme Court has held that if a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda,* 384 U.S. at 474–75, 86 S.Ct. 1602. An issue developed during the evidentiary hearing as to whether defendant Plummer invoked his right to remain silent. Thus, the key to defendant Plummer's motion to suppress hinges on the appropriateness of the officers interrogation of defendant Plummer after he refused to sign the written waiver and stated, "I don't want to waive my rights" i.e., whether this statement was an invocation of his right to remain silent.[6]

This issue must be must be analyzed in light of the United States Supreme Court's

---

ered the following factors: (1) the interest of the witness in the result of the hearing; (2) the witness's relation to any party in interest; (3) the witness's demeanor or manner while testifying; (4) the witness's tendency to speak truthfully or falsely, including the probability or improbability of the testimony given; (5) the witness's situation to see and observe; (6) the witness's apparent capacity and willingness to tell truthfully and accurately what he or she saw and observed; and (7) whether the witness's testimony is supported or contradicted by other evidence in the case. *See United States v. Phillips,* 522 F.2d 388, 391 (8th Cir.1975); *see also United States v. Merrival,* 600 F.2d 717, 719 (8th Cir.1979); *Clark v. United States,* 391 F.2d 57, 60 (8th Cir.), *cert. denied,* 393 U.S. 873, 89 S.Ct. 165, 21 L.Ed.2d 143 (1968); Manual of Model Jury Instructions for the District Courts of the Eighth Circuit 3.03 (1995). Upon consideration of these factors here, the court finds the testimony of the officers to be more credible on the issue of whether defendant Plummer was advised of his rights before any questioning occurred.

6. Officers Cheshier, Van Beest, and Johnson all testified that defendant Plummer stated that he did not want to waive his rights but he was willing to talk to the officers. The court, however, rejects that portion of the officers' testimony in which they indicate that defendant Plummer was willing to talk to the officers. The court notes that the best evidence currently of what transpired over a year and a half ago is Officer Fellin's detailed seven-page report. The court observes that testimony of the officers was riddled with inconsistencies. For example, in addition to the conflict in the officers' testimony as to which officer actually advised Plummer of his rights, the officers could not agree on which officers were present when defendant Plummer was advised of his rights. Officer Cheshier testified that he and Van Beest were in the room when defendant Plummer was advised of his rights while Officer Fellin was unsure whether Officer Cheshier was in the interview room or listening in with him on the video monitor. While Officer Van Beest's testimony mirrored that of Officer Cheshier, that only he and Officer Cheshier were present, Officer Johnson testified that he too was in the interview room at the time defendant Plummer was advised of his rights. Given the lengthy passage of time since the interrogation of defendant Plummer, it is hardly surprising that such inconsistencies would exist. These inconsistencies, however, cast considerable doubt as to the accuracy of the officers' accounts of the events of March 12, 1999. Officer Fellin's report, on the other hand, was prepared using notes taken contemporaneously with the interrogation of defendant Plummer. It makes no mention of defendant Plummer stating that he was willing to talk to the officers. This omission is particularly odd if, as the officers testified, they were all taken aback by defendant Plummer's odd declaration that he did not want to waive his rights but he was willing to talk with the officers. It would seem highly likely that if such an unusual declaration had been made by defendant Plummer that it would have been mentioned by Officer Fellin in his otherwise very detailed report. Rather, the report states only that, "PLUMMER stated that he did not want to waive his rights, but at no time did PLUMMER ask for an attorney or ask the interview to be stopped, as witnessed by TFO Johnson." Gov't Ex. 1, at p. 2. Officer Fellin's report is buttressed by the testimony of defendant Plummer. Moreover, if the facts where as alleged by the officers, the government could have called AUSA Deegan to bolster the officers' testimony. The court again notes that this factual conflict, indeed the entirety of defendant Plummer's motion, could have been easily resolved if the officers had videotaped or otherwise recorded their interaction with defendant Plummer. Assuming arguendo that defendant Plummer made the cryptic remark that he did not want to waive his rights but he was willing to talk to

decision in *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), and its progeny. In *Davis*, the defendant was suspected of beating a sailor to death with a pool cue outside a club on the Charleston Naval Base. Based upon information collected, the defendant was interviewed at the Naval Investigative Service. After being advised of his *Miranda* rights, the defendant waived those rights both orally and in writing. About an hour and a half into the interview, the defendant said, "Maybe I should talk to a lawyer." The Supreme Court found that the defendant's statement was not an unambiguous request for counsel, and therefore the government agents were free to continue questioning the defendant. "If the suspect's statement is not an unambiguous request or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Davis*, 512 U.S. at 461–62, 114 S.Ct. 2350. Although it would have been entirely proper for the agents to ask questions clarifying the meaning of the defendant's statement, the Supreme Court declined to adopt a rule requiring officers to ask clarifying questions. *Id.* at 461, 114 S.Ct. 2350.

■ In the wake of the Supreme Court's decision in *Davis*, the Eighth Circuit Court of Appeals and at least two other federal circuit court of appeals have held that an ambiguous invocation of the right to remain silent does not require that the police cease all questioning. *See United States v. Johnson*, 56 F.3d 947, 955 (8th Cir.1995) ("We consider the defendant's statements as a whole to determine whether they indicate an unequivocal decision to invoke the right to remain silent.") (citing *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir.), *cert. denied*, 493 U.S. 828, 110 S.Ct. 94, 107 L.Ed.2d 59 (1989)); *see also United States v. Mikell*, 102 F.3d 470, 476 (11th Cir.1996) (holding that in light of *Davis*, "a suspect must articulate his desire to end questioning with sufficient clarity so that a reasonable police officer would understand that statement to be an assertion of the right to remain silent," and "if the statement is ambiguous or equivocal, the police have no duty to clarify the suspect's intent."), *cert denied sub nom. Young v. United States*, 520 U.S. 1181, 117 S.Ct. 1459, 137 L.Ed.2d 563 (1997); *United States v. Banks*, 78 F.3d 1190, 1197 (7th Cir.) (applying *Davis's* objective inquiry to determine whether the defendant's invocation of the right to remain silent was ambiguous or equivocal), *vacated on other grounds sub nom. Mills v. United States*, 519 U.S. 990, 117 S.Ct. 478, 136 L.Ed.2d 373 (1996); *Medina v. Singletary*, 59 F.3d 1095, 1100 (11th Cir. 1995) ("Law enforcement officers are not required to terminate an interrogation unless the invocation of the right to remain silent is unambiguous."), *cert. denied*, 517 U.S. 1247, 116 S.Ct. 2505, 135 L.Ed.2d 195 (1996); *Coleman v. Singletary*, 30 F.3d 1420, 1424 (11th Cir.1994) ("the same rule should apply to a suspect's ambiguous or equivocal references to the right to cut off questioning as to the right to counsel" and, faced with an "ambiguous or equivocal" statement, the police therefore "have no

the officers, the court notes that AUSA Deegan should have instructed the officers to go back and clarify with defendant Plummer whether he wanted to remain silent or wished to have counsel present before any questioning occurred. Although the Supreme Court, in *Davis*, declined to require officers to ask clarifying questions, *Davis*, 512 U.S. at 461, 114 S.Ct. 2350, the Court observed that:

Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney. That was the procedure followed by the NIS agents in this case. Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel.

*Davis*, 512 U.S. at 461, 114 S.Ct. 2350. Here, had the officers gone back and asked Plummer clarifying questions, any ambiguity concerning defendant Plummer's alleged statement should have been resolved.

duty to clarify the suspect's intent, and they may proceed with the interrogation"), *cert. denied,* 514 U.S. 1086, 115 S.Ct. 1801, 131 L.Ed.2d 727 (1995); *cf. United States v. Ramirez,* 79 F.3d 298, 305 (2d Cir.) (assuming, *arguendo,* that *Davis* applied to a suspect's right to remain silent, the court held that defendant's nonresponse to two questions, having answered others, "did not require the cessation of questioning since his silence certainly did not constitute a 'clear[ ]' request that all further questioning cease."), *cert. denied,* 519 U.S. 850, 117 S.Ct. 140, 136 L.Ed.2d 87 (1996).

In *Johnson,* the Eighth Circuit Court of Appeals applied the *Davis* rule of unequivocal invocation. *Johnson,* 56 F.3d at 955. The court instructed that:

> After giving Miranda warnings to a suspect in custody, "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." [*Miranda*] at 473–74, 86 S.Ct. at 1627. "[A] person's 'right to cut off questioning'" is central to the Fifth Amendment, and this right must be "'scrupulously honored.'" *Michigan v. Mosley,* 423 U.S. 96, 103, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975) (quoting *Miranda,* 384 U.S. at 474, 479, 86 S.Ct. at 1628, 1630). To adequately invoke this right and effectively cut off questioning, a suspect must indicate "a clear, consistent expression of a desire to remain silent." *United States v. Thompson,* 866 F.2d 268, 272 (8th Cir.1989). We consider the defendant's statements as a whole to determine whether they indicate an unequivocal decision to invoke the right to remain silent. *See id.*

*Id.* In *Johnson,* after the officers read the defendant his *Miranda* warnings, he stated that he did not think that talking to the police would help him since the police had all the evidence, and therefore, he also stated that he did not need to say anything. *Id.* In affirming the district court's denial of the defendant's motion to suppress these statements, the Eighth Circuit

Court of Appeals concluded that the defendant's statements were indirect, ambiguous, and equivocal. *Id.* Thus, the Eighth Circuit Court of Appeals held that the defendant's statements did not constitute an invocation of his right to remain silent. *Id.*

■ In this case, although defendant Plummer did not stand mute or assert that he did not want to answer any questions, the court concludes that defendant Plummer's statements, taken as a whole, indicate an unequivocal decision to invoke his right to remain silent. After being read his rights and being requested to sign the waiver portion of the written rights advisory form, defendant Plummer not only refused to sign the waiver portion of the written rights advisory form but he unequivocally told the officers that he did not want to waive his rights. The court concludes that a reasonable police officer under the circumstances here should have known and understood that defendant Plummer was invoking his right to remain silent. The waiver portion of the written rights advisory form, which defendant Plummer refused to sign, provides in pertinent part that "I am willing to answer questions and make a Statement." Gov't Ex. 2. Defendant Plummer's refusal to sign off on this waiver indicates that defendant Plummer was not willing to answer questions and make a statement to the officers. Defendant Plummer's position was further solidified by his oral declaration to the officers that "he did not want to waive his rights." Gov't Ex. 1 at p. 2. The United States Supreme Court instructed in *Miranda* that, in order to fully honor an accused's self-incrimination rights, "[o]nce warnings have been given, ... [i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At that point, he has shown that he intends to exercise his Fifth Amendment privilege." *Miranda,* 384 U.S. at 473–74, 86 S.Ct. 1602. In this case, after defendant Plummer invoked his right

to remain silent, the officers sought legal advice from the United States Attorney's Office and then proceeded to question him. It is clear that the officers did not "scrupulously honor" defendant Plummer's invocation of his right to remain silent. *See Miranda*, 384 U.S. at 474, 479, 86 S.Ct. 1602; *Michigan v. Mosley*, 423 U.S. 96, 103, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *Brown v. Caspari*, 186 F.3d 1011, 1014 (8th Cir.1999). Therefore, the entire statement following defendant Plummer's invocation of his rights, i.e., anything after defendant Plummer said he did not want to waive his rights, must be suppressed.[7]

### IV. CONCLUSION

The court concludes that while defendant Plummer was advised of his rights before any questioning occurred, after the warnings had been given defendant Plummer unequivocally indicated that he wished to remain silent. The interrogation of him, however, did not cease. Thus, the court concludes that the officers did not honor defendant Plummer's invocation of his right to remain silent. Therefore, defendant Plummer's Motion to Suppress is **granted** and defendant Plummer's entire statement following his invocation of his rights, i.e., anything after he said he did not want to waive his rights, is suppressed.

**IT IS SO ORDERED.**

---

7. Because the court has concluded that defendant Plummer's motion to suppress must be granted here because the officers did not honor his invocation of his right to remain silent, it is unnecessary for the court to consider whether defendant Plummer's statements were involuntary.