**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

**No. 00-4043**

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA, | * | Appeal from the United |
| | * | States District Court |
| Plaintiff - Appellee, | * | for the District |
| | * | of South Dakota |
| v. | * | |
| | * | [UNPUBLISHED] |
| | * | |
| WILLY DERYCK CAJAS-MALDONADO, | * | |
| also known as Willy Deryck Cajas, | * | |
| | * | |
| Defendant - Appellant. | * | |
| | * | |

Submitted: June 12, 2001
Filed: July 2, 2001

Before WOLLMAN, Chief Judge, HAMILTON[1] and MURPHY, Circuit Judges.

PER CURIAM.

On November 6, 2000, Willy Cajas-Maldonado (the Defendant) conditionally pled guilty to the charge of possession of a counterfeit United States immigration document, 18 U.S.C. § 1546(a), reserving the right to appeal the district court's[2] denial of his motion to suppress incriminating statements he made on May 5, 2000 to United States Immigration and Naturalization Service (INS) Special Agent James Weisenhorn (Agent Weisenhorn).

---

[1]The Honorable Clyde H. Hamilton, United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

[2]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

On appeal, the Defendant contends that the district court erred when it denied his motion to suppress.  We affirm.

I

At the suppression hearing, the government principally relied on the testimony of Agent Weisenhorn.  Agent Weisenhorn testified that, in the early morning hours of April 24, 2000, he was contacted by the INS Central States Command Center in connection with the arrest of the Defendant for driving while intoxicated in Minnehaha County, South Dakota.  At that time, Agent Weisenhorn was informed that the Defendant had been interviewed by an INS special agent and that the Defendant was determined to be an illegal alien because he was in the possession of a resident alien card deemed to be counterfeit.

During business hours on April 24, 2000, Agent Weisenhorn interviewed the Defendant at the Minnehaha County jail.  According to Agent Weisenhorn, he initially attempted to ascertain whether the Defendant wanted his Miranda[3] rights read in English or Spanish.  According to Agent Weisenhorn, the Defendant indicated that he wanted his rights read in English.  Agent Weisenhorn testified that he told the Defendant:

> [Y]ou must understand your rights.  You have the right to remain silent.  Anything you say can be used against you in court or in any immigration or administrative proceedings.  You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.  If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.  If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time.  You also have the right to stop answering at any time until you talk to a lawyer.

According to Agent Weisenhorn, the Defendant stated that he understood his Miranda rights and that he was willing to answer questions.  Agent Weisenhorn testified that, during his questioning

---

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

of the Defendant, the Defendant stated his name, that he was from Guatemala, and that he entered the United States at San Ysidro, California in 1989.

On the INS Form 831 that Agent Weisenhorn filled out in connection with his interview of the Defendant, it states that Agent Weisenhorn read the Defendant his rights in English and that the Defendant was uncooperative. When asked what led him to state that the Defendant was uncooperative, Agent Weisenhorn testified as follows:

> [A]s part of the immigration process for every individual who is not a citizen of Mexico or Canada that is being set up for deportation process, I am required to fill out a form I-217, which is information for travel documents or passports. This is for individuals who do not have a passport or travel documents in their possession and will be returning to their country. While I filled that out, there were a couple of questions that the individual either refused to answer or stated that he can't recall where I believe most individuals would remember.

Agent Weisenhorn testified that the questions the Defendant refused to answer, or could not recall the answer to, concerned "where he attended school" and the "names and addresses" of uncles and cousins living outside of Guatemala.

At the suppression hearing, the Defendant testified that, although he stated at the April 24, 2000 interview that he knew his Miranda rights, he was never read his Miranda rights at that interview. The Defendant also testified that, after Agent Weisenhorn started asking him some questions concerning himself and his family, he indicated that he "didn't want to answer those questions at the moment." The Defendant testified that the questions concerning himself and his family were "where I was [from], from what nationality I was from, if my mother and father were alive, how many brothers and sisters I had, and if they were all here in the United States or if they were back in my country." According to the Defendant, when he refused to answer these questions, Agent Weisenhorn concluded the interview and left.

- 3 -

Agent Weisenhorn interviewed the Defendant a second time at the Minnehaha County jail on May 5, 2000. According to Agent Weisenhorn, the purpose of the second interview was to obtain "information on how the counterfeit document came to be in South Dakota and how [the Defendant] obtained it and what his purposes for having it were." Before questioning the Defendant, Agent Weisenhorn did not read the Defendant his <u>Miranda</u> rights. Rather, according to Agent Weisenhorn, he "advised" the Defendant "that he still had his <u>Miranda</u> rights." Agent Weisenhorn then asked the Defendant how and where he had obtained the counterfeit resident alien card and whether he knew the resident alien card was counterfeit. In response to these questions, the Defendant made incriminating statements.

On May 17, 2000, a federal grand jury sitting in the District of South Dakota charged the Defendant with possession of a counterfeit United States immigration document, 18 U.S.C. § 1546(a). On August 21, 2000, the Defendant moved to suppress the incriminating statements he made to Agent Weisenhorn.

Following an evidentiary hearing on September 7, 2000, a United States Magistrate Judge recommended to the district court that the Defendant's motion to suppress be denied. In the report and recommendation, the magistrate judge addressed two issues: (1) whether Agent Weisenhorn read the Defendant his <u>Miranda</u> rights on April 24, 2000, and (2) whether the Defendant's incriminating statements to Agent Weisenhorn were knowingly, voluntarily, and intelligently made. With respect to the first issue, the magistrate judge credited the testimony of Agent Weisenhorn and concluded that Agent Weisenhorn read the Defendant his <u>Miranda</u> rights on April 24, 2000 and that the Defendant understood those rights. With respect to the second issue, the magistrate judge concluded that the Defendant's incriminating statements were knowingly, voluntarily, and intelligently made. In reaching this conclusion, the magistrate judge relied on several factors. First, the magistrate judge noted that the Defendant was well aware of his <u>Miranda</u> rights at both the April 24 and May 5, 2000 interviews and knew how to invoke those rights. Second, the magistrate judge noted that the Defendant "chose to answer some of Agent

- 4 -

Weisenhorn's questions, but not others." Third, the magistrate judge noted that, at the May 5, 2000 interview, Agent Weisenhorn did not revisit the questions the Defendant refused to answer at the April 24, 2000 interview. Fourth, the magistrate judge noted that the record was devoid of any evidence demonstrating that the Defendant was coerced into making the incriminating statements; rather, the Defendant knew his Miranda rights and knew how to invoke them.[4]

On October 10, 2000, with one cautionary note, the district court adopted the magistrate judge's report and recommendation "in its entirety." In its cautionary note, the district court explained that it was not "convinced" that, if the Defendant unequivocally invoked his right to remain silent at the April 24, 2000 interview, Agent Weisenhorn's questioning of the Defendant on May 5, 2000 did not run afoul of the Supreme Court's decision in Mosley. However, the district court noted Mosley was not applicable because the Defendant "clearly waived his right to remain silent to many of Agent Weisenhorn's questions and, at the

---

[4]Alternatively, the magistrate judge concluded that, even if the Defendant unequivocally invoked his right to remain silent at the April 24, 2000 interview, Agent Weisenhorn's questioning of the Defendant on May 5, 2000 did not run afoul of the Supreme Court's decision in Michigan v. Mosley, 423 U.S. 96 (1975) (admissibility of statements obtained after the suspect in custody has decided to remain silent depends, under Miranda, on whether his right to cut off questioning was "scrupulously honored"). The magistrate judge reasoned:

> [The Defendant] testified that when he began to refuse to answer some of Agent Weisenhorn's questions during the first interview, [Agent] Weisenhorn concluded the interview and left. Several days passed between the first and second interviews, and Agent Weisenhorn reminded [the Defendant] of his rights before beginning the second interview. Finally, [the Defendant] stated on direct examination that, during the second interview, Agent Weisenhorn did not revisit the questions [the Defendant] refused to answer during the first interview. Thus, Agent Weisenhorn was not overreaching and did not act improperly or coercively in conducting a second interview.

second interview, Agent Weisenhorn did not revisit any of the questions Defendant did not wish to answer during the first interview," and because, at the suppression hearing, the Defendant "stated more than once that he was aware of his rights."

On November 6, 2000, the Defendant conditionally pled guilty to the § 1546(a) charge, reserving the right to appeal the district court's denial of his motion to suppress. On December 4, 2000, the district court sentenced the Defendant to time served plus one day. The Defendant noted a timely appeal.

II

The Defendant contends that he asserted his right to remain silent at the April 24, 2000 interview, and, once there is an assertion of the right to remain silent, it must be scrupulously honored under Mosley. The Defendant further contends that his right to remain silent was not scrupulously honored by Agent Weisenhorn at the May 5, 2000 interview, and, consequently, the district court erred when it denied the motion to suppress.

We review the district court's "ultimate determination" of whether there was a violation of Miranda and its progeny de novo, but the district court's factual findings are reviewed for clear error. United States v. Johnson, 169 F.3d 1092, 1097 (8th Cir.), cert. denied, 528 U.S. 857 (1999).

In order to protect the right granted by the Fifth Amendment that "no person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V, the Supreme Court in Miranda adopted prophylactic procedural rules that must be followed during custodial interrogations. Miranda, 384 U.S. at 444. The Court held that a suspect in custody "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. In general, any statements elicited from a suspect in violation of

- 6 -

these rules are inadmissible in the government's case-in-chief. Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam).[5]

In order for a confession obtained during a custodial interrogation to be admissible, the defendant must have knowingly, voluntarily, and intelligently waived his Miranda rights. Miranda, 384 U.S. at 479. The government has the burden of proving that the defendant knowingly, voluntarily, and intelligently waived his Miranda rights. Id.

In Mosley, the Supreme Court addressed an issue left open by Miranda--the circumstances, if any, under which resumption of questioning is permissible after a suspect in custody has indicated that he wishes to remain silent. Mosley, 423 U.S. at 100-02. Rejecting an interpretation of Miranda that would create a "per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent," Mosley, 423 U.S. at 102-03, the Supreme Court concluded "that the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored,'" Mosley, 423 U.S. at 104.[6]

However, Mosley does not apply unless the defendant's statements represent a clear and unequivocal "expression of a

---

[5]In Dickerson v. United States, 530 U.S. 428, 444 (2000), the Supreme Court held that Miranda announced a constitutional rule that Congress could not overrule legislatively.

[6]In Mosley, the Supreme Court set forth the following list of factors for a court to consider in making this inquiry: (1) whether the police had given the suspect Miranda warnings at the first interrogation and the suspect acknowledged that he understood the warnings; (2) whether the police immediately ceased the interrogation when the suspect indicated that he did not want to answer questions; (3) whether the police resumed questioning the suspect only after the passage of a significant period of time; (4) whether the police provided a fresh set of Miranda warnings before the second interrogation; and (5) whether the second interrogation was restricted to a crime that had not been a subject of the earlier interrogation. Mosley, 423 U.S. at 104-07.

desire to remain silent." United States v. Thompson, 866 F.2d 268, 272 (8th Cir. 1989); see also United States v. Hurst, 228 F.2d 751, 759-60 (6th Cir. 2000) (Mosley analysis not applied where the defendant did not clearly and unequivocally assert his right to remain silent.). "To determine whether a defendant has unequivocally invoked the right to remain silent, the defendant's statements are considered as a whole." Simmons v. Bowersox, 235 F.3d 1124, 1131 (8th Cir. 2001).

In our view, the Defendant never clearly and unequivocally invoked his right to remain silent at the April 24, 2000 interview. After the Defendant was read his Miranda rights at the April 24, 2000 interview, he stated that he understood his Miranda rights and was willing to answer Agent Weisenhorn's questions. According to the Defendant, after Agent Weisenhorn started asking him some questions concerning himself and his family at the April 24, 2000 interview, he stated that he did not want to answer those questions "at the moment." The Defendant's statement was not a clear and unequivocal invocation of the right to remain silent. See, e.g., United States v. Al-Muqsit, 191 F.3d 928, 936-37 (8th Cir. 1999) (defendant did not clearly and unequivocally invoke right to remain silent initially by stating "he wasn't ready to talk about" the murders and by stating "I don't think right now" when asked about the murders ten hours later); Thompson, 866 F.2d at 270-72 (defendant did not clearly and unequivocally invoke right to remain silent by stating he wanted to "sleep on it" before he talked to the police and that he would "wait a little while" before he was interviewed). Because the Defendant did not clearly and unequivocally invoke his right to remain silent at the April 24, 2000 interview, Mosley's "scrupulously honored" standard does not come into play. Thompson, 866 F.2d at 272.

Having concluded that the Defendant did not clearly and unequivocally invoke his right to remain silent at the April 24, 2000 interview, we must proceed to the question of whether the Defendant knowingly, voluntarily, and intelligently waived his Miranda rights at the May 5, 2000 interview. To determine whether a defendant has knowingly, voluntarily, and intelligently waived his Miranda rights, we examine all the circumstances of each

particular case.  United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999).  "The circumstances include the background, experience, and conduct of the accused."  Id. (citation and internal quotation marks omitted).  To effectuate a waiver of one's Miranda rights, a suspect need not utter any particular words.  The Supreme Court has explained that the "question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case."  North Carolina v. Butler, 441 U.S. 369, 373 (1979).

The circumstances surrounding the May 5, 2000 interview compel the conclusion that the Defendant knowingly, voluntarily, and intelligently waived his Miranda rights at that interview.  First, although Agent Weisenhorn did not administer a new set of Miranda warnings, he did "advise[]" the Defendant "that he still had his Miranda rights."  Second, there is no evidence that the Defendant did not understand his Miranda rights.  Indeed, the record reflects that the Defendant repeatedly stated at the suppression hearing that he understood his Miranda rights at both the April 24 and May 5, 2000 interviews.  Third, there is no evidence suggesting that Agent Weisenhorn employed any coercive tactics to gain the Defendant's incriminating statements.  Fourth, there is no evidence of diminished capacity on the part of the Defendant.  In short, we have no doubt that the Defendant knowingly, voluntarily, and intelligently waived his Miranda right to remain silent at the May 5, 2000 interview.[7]

---

[7]We note that Agent Weisenhorn's failure to administer a new set of Miranda warnings at the May 5, 2000 interview does not alter the result.  A time interval between a Miranda warning and a defendant's statement does not necessarily mandate that the officer administer a new set of Miranda warnings.  Boyd, 180 F.3d at 976-77 (statements made following a one to two hour time interval were covered by previous Miranda warnings); see also United States v. Andaverde, 64 F.3d 1305, 1313 (9th Cir. 1995) (one day time interval); Martin v. Wainwright, 770 F.2d 918, 930-31 (11th Cir. 1985) (one week time interval), modified on other grounds by Martin v. Wainwright, 781 F.2d 185 (11th Cir. 1986); Biddy v. Diamond, 516 F.2d 118, 122 (5th Cir. 1975) (two week time interval).  In this case, in light of the facts that Agent Weisenhorn "advised" the Defendant at the May 5, 2000 interview "that he still had his

                              III

    For the reasons stated herein, the judgment of the district
court is affirmed.

        A true copy.

            Attest:

                CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

Miranda rights," the lack of evidence suggesting that the Defendant did not understand his Miranda rights, the district court's finding that the Defendant was a "relatively intelligent young man," and the noncoercive nature of the April 24 and May 5, 2000 interviews, we cannot conclude that the eleven-day interval between the Defendant's Miranda warnings and the Defendant's May 5, 2000 interview was unreasonable.