**UNITED STATES of America, Plaintiff,**

v.

**Todd Allan MANSKER, Defendant.**

**No. CR02–4060–MWB.**

United States District Court, N.D. Iowa, Western Division.

Jan. 20, 2003.

Shelley A. Horak, Horak & Associates, Sioux City, IA, for Defendant.

———

Shawn Stephen Wehde, Special Ass't, U.S. Attorney's Office, Sioux City, IA, for Plaintiff.

**ORDER REGARDING DEFENDANT'S MOTION FOR SANCTIONS, MOTION FOR JUDGMENT OF ACQUITTAL, AND MOTION FOR NEW TRIAL**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................906

II. *LEGAL ANALYSIS* ...............................................908
 A. *Motion for Sanctions* ..................................908
 1. *Destruction of notes* ............................908
 a. *Jencks violation* ........................908
 b. Brady *violation* .........................910
 2. *Failure to turn over interview reports* ...............911
 B. *Motion for Judgment of Acquittal* ......................912
 1. *Standards applicable to motions for judgment of acquittal* .............912
 2. *Sufficiency of the evidence* ......................914
 C. *Motion for New Trial* ..................................919
 1. *Standards applicable to motions for new trial* .......................919
 2. *Sufficiency of the evidence* ......................920

III. *CONCLUSION* .................................................921

The scene is a familiar one in this district—at the close of the government's conspiracy to distribute methamphetamine case, the exhibit table situated at the front of the courtroom is piled high with exhibits. On the table sit methamphetamine, drug packaging materials, cutting agents, videotaped surveillance, photographs, pipes, straws, scales, money, drug notes with names and telephone numbers, telephone and cell phone records, receipts for lithium batteries, discarded and dismantled lithium batteries, Ephedrine tablets, discarded Ephedrine packaging, muriatic acid, anhydrous ammonia storage containers, and other precursor materials. Not every drug trial has all of this evidence (although many of them do), but in the undersigned's experience as a trial judge in the district with the 6th busiest criminal docket per judge in the nation, every drug trial has some of it.

That is, until *United States of America v. Mansker.* At the close of this trial, the exhibit table was barren because not a single exhibit was introduced. The jury found the defendant guilty of conspiracy to distribute methamphetamine, and the government's only evidence was the testimony of six convicted drug felons hoping to receive reductions in their sentences by inculpating the defendant without any corroborating physical evidence.

This case opens the windows on but one of the many flaws in the United States Sentencing Guidelines. The theory underlying the Guidelines's scheme of allowing for sentence reductions at the prosecutor's discretion if a defendant provides information on his fellow co-conspirators is that the "substantial assistance" motions will be carrots to dangle in front of the noses of defendants facing long sentences. *In theo-*

*ry,* the motions enable the United States Attorney's Office to use the little fish to catch the big fish.[1]

Sentencing reductions for cooperation can be substantial. For example, in this case, one cooperating witness had a Guideline range of 240 months to life imprisonment. As a result of the witness's "substantial assistance," the government moved under 18 U.S.C. § 3553(e) and under U.S.S.G. § 5K1.1 to reduce his sentence below his Guideline range and below the statutory mandatory minimum. Absent the government making these motions, the court would have been required to impose at least a 20 year sentence. However, because of the government's motions, the court was empowered to go below his Guideline range, and the witness was ultimately sentenced to 75 months. Furthermore, because this particular witness testified in this trial and two others, the government moved under Rule 35 to reduce his sentence even further.

Theoretical underpinnings aside, this case compels the court to echo Judge Bright's oft-repeated criticism of the United States Sentencing Guidelines: "What kind of a criminal justice system rewards the drug kingpin or near-kingpin who informs on all the criminal colleagues he or she has recruited, but sends to prison for years and years the least knowledgeable or culpable conspirator, one who knows very little about the conspiracy and is without information for the prosecutors?" *United States v. Griffin,* 17 F.3d 269, 274 (8th Cir.1994) (Bright, J., dissenting). Un-

til Congress speaks otherwise, the answer, sadly, is our system.

## I. INTRODUCTION

On July 23, 2002, the United States Grand Jury for the Northern District of Iowa returned a one-count indictment against defendant Todd Allan Mansker, charging him with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A), and 21 U.S.C. § 846. The indictment identifies the time period of the conspiracy as between 1997 and February 2002.

On October 7, 2002, this case proceeded to trial before a jury. At trial, the government identified eight cooperating witnesses but ultimately called six cooperating witnesses because the court excluded two witnesses from testifying. Each cooperating witness who testified named the defendant as an occasional source of their supply of methamphetamine, as a purchaser of methamphetamine in too great a quantity to be for personal use, or as a middle-man in the witness's own enterprise of distributing methamphetamine.

The court's exclusion of two cooperating witnesses arose out of the defendant's motion for sanctions. Midway through trial, the defendant fortuitously learned that he was missing potentially exculpatory discovery documents because one government witness, Cory Derby, testified that he debriefed twice, but the government had pro-

---

**1.** In fiscal year 2001, 62.3% of the Northern District's criminal caseload was drug trafficking cases. This compares to the national average of 41.2%. In the Northern District, 201 defendants were sentenced for drug trafficking crimes. More shockingly, of this district's towering drug caseload, 69% of the drug cases involved methamphetamine compared to the national average in federal courts of just 14.2%. The median drug trafficking sentence in the Northern District was 100 months compared to the national average of 51 months. Substantial assistance motions were granted in 38.2% of the Northern District's drug cases compared to 26.3% nationally. United States Sentencing Commission, < *www.ussc.gov* >.

vided Mr. Mansker's counsel with only one debriefing report. The court recessed and ordered the government to produce all of Mr. Derby's debriefing reports, as well as any other possible discovery document that should have been produced but was overlooked. The government complied and produced the reports, as well as two Drug Enforcement Administration ("DEA") agents' handwritten notes from the debriefings. At this point, the defendant moved for sanctions for the government's failure to produce exculpatory evidence. The defendant argued that the non-disclosed reports were exculpatory because they failed to mention the defendant. The court held a hearing on the defendant's motion for sanctions and, at the conclusion of the hearing, found that these documents were exculpatory because the witnesses during these interviews provided ostensibly complete lists of their drug suppliers and customers but notably failed to identify defendant Mansker. In addition, one of the DEA agent's handwritten notes of Mr. Derby's debriefing, but not the finalized typewritten report, contained defendant Mansker's name but in an exculpatory fashion.

On the third day of trial, the defendant renewed his motion for sanctions, raising a new issue—the failure of the government to reveal impeachment evidence of one of its witnesses, Paula Meilleur. Ms. Meilleur admitted in a separate trial that she had lied in court regarding her involvement in drug trafficking. Government's counsel was unaware of this witness's testimony, but the case agent assigned to Mansker's case was involved in the other trial.

The defendant requested dismissal with prejudice as a sanction for the government's failure to provide exculpatory information and because of its failure to turn over the transcript in which Ms. Meilleur admitted to committing perjury, but the court instead excluded the government's cooperating witnesses who had not yet testified, Paula Meilleur and Cloie Hegge, as well as the testimony of Task Force Officer Dail Fellin. In his post-trial motions, the defendant renews his request for dismissal and, in the alternative, now requests that the court strike the testimony of all six of the government witnesses who testified because handwritten notes of these witnesses' interviews were not disclosed.

At the close of the government's case, the defendant moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The court reserved ruling on this motion. Defendant Mansker testified on his own behalf and called two witnesses—Patrick Pinney (the defendant's employer) and Alex Bender (the defendant's friend). Mansker testified that he was a methamphetamine user but denied involvement in a conspiracy to distribute methamphetamine. He testified, however, that he occasionally purchased personal use quantities of methamphetamine and that he and his friends would sometimes share their methamphetamine. Mr. Pinney testified about Mr. Mansker's personal background and strong work ethic, and Mr. Bender testified about Mr. Mansker's good character and about their joint use of methamphetamine. At the conclusion of all the evidence, defendant Mansker renewed his motion for judgment of acquittal, and the court once again reserved ruling.

On October 9, 2002, the jury returned a verdict of guilty against Mr. Mansker. On November 13, 2002, Mr. Mansker filed a renewed motion for sanctions for the government's violation of discovery rules, the Jencks Act, and the *Brady* rule, a motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(c), and a motion for a new trial pursuant to Fed-

eral Rule of Criminal Procedure 33. In his post-trial motion for sanctions, the defendant argues that the government's destruction of its hand-written interview notes violates his right to due process. In his post-trial motion for judgment of acquittal, Mr. Mansker contends that his conviction was secured through the use of perjured and inherently incredible testimony and that the evidence introduced at trial was insufficient for a reasonable jury to return a verdict against him on the charge set forth in the indictment. Mr. Mansker makes the same contention as the basis for his post-trial motion for new trial. The government filed a timely resistance to each motion.

## II. LEGAL ANALYSIS

### A. Motion for Sanctions

In his renewed motion for sanctions, the defendant contends that the destruction of the agents' handwritten notes constituted a violation of the Jencks Act, 18 U.S.C. § 3500, and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Furthermore, the defendant renews his argument made at trial that the government's failure to turn over exculpatory information violated the Jencks Act and Brady. The government resists the defendant's motion and denies that the DEA agents destroyed their interview notes in bad faith and asserts that the United States Attorney's Office did not sanction the agents' practice of destroying their notes. In addition, the government renews the argument it made at trial, asserting that the interview reports that it failed to turn over to the defendant prior to trial are not exculpatory and, therefore, that the government has not violated either Jencks or Brady. At trial, the court found that the non-disclosed interview reports and notes were exculpatory and, as a sanction, excluded three government witnesses—cooperating witnesses Cloie

Hegge and Paula Meiuller, and case agent Dail Fellin.

### 1. Destruction of notes

With respect to the defendant's argument that the destruction of its rough interview notes is a Jencks and Brady violation, the court agrees that, under certain circumstances, such destruction could be a constitutional and statutory violation. Those circumstances, however, do not exist here.

### a. Jencks violation

In United States v. Dupree, 553 F.2d 1189 (8th Cir.1977), the Eighth Circuit Court of Appeals addressed the problem of the destruction of rough notes. In Dupree, the court rejected the defendant's argument that the F.B.I.'s destruction of its original handwritten surveillance logs was a Jencks Act violation, reasoning:

> In United States v. Mechanic, 454 F.2d 849, 857 (8th Cir.1971), the court held that the trial court committed no error in denying defendant access to the agent's handwritten logs which were destroyed in good faith and in the normal procedure after being substantially incorporated in the agent's report. In United States v. Roell, 487 F.2d 395, 401 (8th Cir.1973), we held notes made by the agent during an investigation were not discoverable under Fed.R.Crim.P. 16(b) or the Jencks Act, 18 U.S.C. § 3500. Defendant does not charge bad faith in the destruction of the notes and points to no reasonable likelihood that the typewritten notes produced vary from the original notes.

Dupree, 553 F.2d at 1191.

Still, "[t]he Jencks Act has been interpreted to impose no duty upon law enforcement officers to retain their rough, handwritten notes after the contents have been incorporated into more formal re-

ports and the reports are checked for accuracy, especially when the notes have been destroyed in good faith." *United States v. Williams*, 604 F.2d 1102, 1116 (8th Cir.1979) (citing *United States v. Jiminez*, 484 F.2d 91 (5th Cir.1973); *United States v. Lane*, 479 F.2d 1134, 1136 (6th Cir.), *cert. denied*, 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1973) (citing *United States v. Fruchtman*, 421 F.2d 1019, 1021–22 (6th Cir.1970)); *United States v. Terrell*, 474 F.2d 872, 877 (2d Cir.1973)). In *United States v. Williams*, 604 F.2d 1102, 1116 (8th Cir.1979), the Eighth Circuit affirmed the district court's refusal to strike the testimony of an officer who admitted to destroying his original handwritten notes after a finalized report was prepared.

Similarly, in *United States v. Grunewald*, 987 F.2d 531, 535 (8th Cir.1993), the Eighth Circuit Court of Appeals noted that, while it would have been more prudent for the government to have provided the defendant with the officers' handwritten notes, the district court's conclusion that the government's failure to do so did not violate Jencks was not clearly erroneous. The court reasoned:

> In our review of challenges to the production of typewritten summaries where handwritten notes have been destroyed, we have considered the agent's good faith in destroying the notes, the likelihood that the typewritten notes materially varied from the handwritten notes, and the likelihood that the appellant was prejudiced by the destruction of the notes. *United States v. Leisure*, 844 F.2d 1347, 1361 (8th Cir.), *cert. denied*, 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 342 (1988).

*Grunewald*, 987 F.2d at 535.

■ Thus, the court of appeals has articulated a three-part inquiry into the Jencks question raised by the defendant in this motion to sanction. The court must examine (1) the agent's good faith in destroying his or her notes, (2) the likelihood of a material variance between the notes and the finalized report, and (3) the likelihood that the defendant was prejudiced by their destruction. *See id.; accord Leisure*, 844 F.2d at 1361 ("Where handwritten notes have been incorporated into typewritten notes, we review a Jencks Act challenge to the destruction of the handwritten notes by considering (1) the agent's good faith in destroying the notes, (2) the likelihood that the typewritten notes materially varied from the handwritten notes, and (3) the likelihood that appellants were prejudiced by the destruction of the notes.") (citing *United States v. Hoppe*, 645 F.2d 630, 634 (8th Cir.), *cert. denied*, 454 U.S. 849, 102 S.Ct. 170, 70 L.Ed.2d 138 (1981); *Williams*, 604 F.2d at 1116–17).[2]

Here, Mr. Mansker does charge bad faith in the destruction of the agents' notes and has some evidence that the destroyed notes may vary from the finalized reports because, as to one set of notes that was ultimately produced, Mr. Mansker's name appeared in the notes but not in the typewritten report. However, the defendant has adduced no evidence that the agents acted in bad faith in destroying their handwritten notes, and the court, while it does not sanction the practice, is unwilling to infer bad faith from the fact of the destruction.

With respect to the set of handwritten notes that did mention the defendant, the witness, Mr. Derby, identified Mr. Mansker as a methamphetamine user. At trial, Mr. Derby pegged Mr. Mansker as a dealer. Therefore, the notes were critical to the defendant's theory of defense: he ar-

---

2. The same analysis applies to Mr. Mansker's argument that the agents' destruction of notes violates his right to due process. *See Hoppe*, 645 F.2d at 634. The court, therefore, will not distinguish between the two discrete arguments.

gued that he was a methamphetamine user and played no role in the conspiracy to distribute methamphetamine but that, in the hopes of receiving sentencing consideration, the cooperating witnesses inflated his role to that of a co-conspirator.

The difference between the notes that were produced and the finalized report is disturbing, and the court found at trial that the government's failure to produce these notes was a *Brady* violation and, consequently, imposed sanctions against the government. Mr. Mansker was not prejudiced by the government's failure to produce the specific set of notes that contained a reference to him, however, because he was able to cross-examine Mr. Derby about his prior statement.

■ On this motion to sanction, the defendant reasserts this argument that the government's failure to provide the notes it had in its possession was a *Brady* and discovery rule violation but, in addition, challenges the destruction of all the handwritten notes that, obviously, were not produced. The defendant argues that, because he does not have access to the notes that were destroyed pertaining to interviews of the government's other witnesses, he cannot be assured that the other notes of the other witnesses' interviews are not likewise exculpatory. The defendant has not shown that the agents destroyed their notes in bad faith, that there is a likelihood that the typewritten notes materially vary from the handwritten notes, nor that there is a likelihood that he was prejudiced by the destruction of the other agents' notes. *See Hoppe*, 645 F.2d at 634 (identifying factors to consider to determine whether Jencks Act violation occurred). Therefore, the court finds that the destruction of agents' handwritten notes when a finalized version is prepared is not a Jencks Act violation, and the court overrules the defendant's motion on this ground.

### b. Brady *violation*

The defendant similarly argues that the destruction of handwritten notes constitutes a *Brady* violation. In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the government is required, pursuant to a discovery request by a defendant, to produce all evidence favorable to the defendant, and that the suppression of such favorable, material evidence violates due process. The defendant urges the court to dismiss his case with prejudice or to strike the testimony of each of the government's witnesses in order to remedy the government's *Brady* violation.

■ The court reiterates that it agrees that the handwritten rough notes were exculpatory and that the government's failure to produce them was a *Brady* violation. Again, however, the court finds that its exclusion of witnesses cured the violation and that, because Mr. Mansker was able to cross-examine Mr. Derby about his prior statement, Mr. Mansker suffered no prejudice. Regarding the rough interview notes that the government could not produce because they had been destroyed, the defendant has come forward with no evidence tending to prove that they were exculpatory, that they differed from the finalized reports in a way that would be exculpatory or material, nor that the government has the notes in its possession. Consequently, there was not a *Brady* violation. *See Cornell v. Nix*, 921 F.2d 769, 770 (8th Cir.1990) (to show *Brady* violation, defendant must demonstrate: "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material.").

Nevertheless, the court is troubled by the agents' practice of destroying their notes after typewritten summaries have been prepared because it is a subversion of the truth-finding process, which this court

refuses to sanction as a tolerable practice. This court criticized a parallel law enforcement practice in *United States v. Plummer*, 118 F.Supp.2d 945 (N.D.Iowa 2000). In *Plummer*, the issue before the court on a motion to suppress revolved around whether and how a defendant was *Mirandized*. Had the interrogation been videotaped, resolution of the factual dispute would have been unnecessary. But, an edict of the United States Drug Enforcement Agency proscribed its officers from recording the questioning of suspects. *Id.* at 947. In *Plummer*, the court cautioned that, if law enforcement officers refused to adopt a policy of videotaping or otherwise recording interviews, it would likely adopt Judge Kornmann's approach in the District of South Dakota:

> In the face of the government's refusal to videotape or otherwise record questioning of suspects, Judge Kornmann has instituted the following procedure:
>> In all future cases in the Northern and Central Divisions of the District of South Dakota in which statements taken after November 1, 1999, are not tape or video recorded and there is no good reason why the taping or recording was not done and there is disagreement over what was said, this Court intends to advise juries of exactly what is set forth in this Order and explain to the jury that F.B.I. agents continue to refuse to follow the suggestions of Chief Judge Piersol and the presiding judge in the Northern and Central Divisions of the District of South Dakota and why, in the opinion of the court, they refuse to follow such suggestions. The prosecutor will also not be allowed to question defendants about 302's in the absence of a cautionary instruction and explanation by the Court to the jury. Fair warning has now been provided and it is expected that the United States Attorney will communicate all

of this to the Federal Bureau of Investigation so that they can decide what to do in the future.

*Azure,* CR99–30077, at *2.

*Id.*

When questioned, neither the case agent nor the prosecutor could articulate any legitimate justification for destroying handwritten notes after they had been reduced to a finalized report. Because there is no legitimate reason for destroying rough notes and because of the danger their destruction poses to the integrity of the criminal justice system, the court is seriously contemplating entering an administrative order that no federal law enforcement officer or state officer working with the Task Force in the Northern District of Iowa, absent a satisfactory explanation for the destruction of their rough notes, will be allowed to testify if the officer destroyed his or her notes after preparing a finalized report.

### 2. Failure to turn over interview reports

 The defendant also contends in his motion for sanctions that the government's failure to turn over certain debriefing reports violates *Brady* and Jencks because these reports were exculpatory and critical to the defense. "The government has an affirmative duty to disclose evidence that is favorable to the accused and material to guilt or punishment." *United States v. Gillings,* 156 F.3d 857, 859–60 (8th Cir.1998) (citing FED. R. CRIM. P. 16; *Brady,* 373 U.S. at 83, 83 S.Ct. 1194). To establish a *Brady* violation, a defendant must show that "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material." *Cornell,* 921 F.2d at 770.

Here, there is no question that the government suppressed evidence. The gov-

ernment, however, argues that the nondisclosed information was not material and not favorable to the defendant. The government, however, has a very truncated view of what constitutes exculpatory information and argues that the witnesses' failure to mention the defendant is not exculpatory.

■ During the hearing held on the second day of trial, the court found that this information, which consisted of interview notes in which the witnesses failed to name Mr. Mansker when identifying their sources and customers, was indeed exculpatory. These omissions were particularly exculpatory under the circumstances of this case in which the defense's theory was that the witnesses fabricated testimony after being sentenced in the hopes of receiving a Rule 35 motion. Under this set of facts, the defendant is entitled to know that he was not named earlier because that was the core issue in this case.

■ The court affirms its ruling made on the last day of trial that the government's failure to provide the defendant with the cooperating witnesses' debriefing reports that did not mention the defendant constitutes a *Brady* and discovery rule violation. The court recognizes its authority to impose a sanction of dismissal for these violations, but the court is of the opinion that its order to disclose all interview reports and its exclusion of the testimony of Ms. Hegge, Ms. Meilleur, and Officer Fellin prevented any prejudice or harm to the defendant. *Cf. United States v. Flores–Mireles,* 112 F.3d 337, 340 (8th Cir.1997) ("The district court has broad discretion in fashioning sanctions for violations of Rule 16, and that decision will be overturned only upon a finding of an abuse of discretion.") (citing *United States v. Manthei,* 979 F.2d 124, 126 (8th Cir.1992)). Accordingly, the court denies the defendant's request that the court impose a sanction either of dismissing the indict-

ment with prejudice or striking the testimony of the government's witnesses.

## B. Motion for Judgment of Acquittal

### 1. Standards applicable to motions for judgment of acquittal

■ The court has considered in detail the standards applicable to motions for judgment of acquittal, *see United States v. Ortiz,* 40 F.Supp.2d 1073 1078–79 (N.D.Iowa 1999) and *United States v. Saborit,* 967 F.Supp. 1136, 1138–40 (N.D.Iowa 1997), and will set forth the highlights of those discussions, as well as some more recent case law, here. Rule 29 of the Federal Rules of Criminal Procedure provides, in pertinent part, as follows:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

FED. R. CRIM. P. 29(a). Although Rule 29 specifically provides for such eventualities, it is well-settled that "[j]ury verdicts are not lightly overturned." *United States v. Hood,* 51 F.3d 128, 129 (8th Cir.1995); *accord United States v. Burks,* 934 F.2d 148, 151 (8th Cir.1991). Rather, the caselaw governing motions for judgment of acquittal confirms that a significant restraint is placed on a district court's authority to overturn a jury's verdict. *See United States v. Gomez,* 165 F.3d 650, 654 (8th Cir.1999) (observing that a judgment of acquittal should only be granted "if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt"); *United States v. Perkins,* 94 F.3d 429, 436 (8th Cir.1996) (" '[t]he standard of review of an appeal concerning the sufficiency of the evidence is very strict, and the verdict of the jury should not be over-

turned lightly.'") (quoting *Burks,* 934 F.2d at 151), *cert. denied,* 519 U.S. 1136, 117 S.Ct. 1004, 136 L.Ed.2d 882 (1997).

The United States Court of Appeals for the Eighth Circuit has, therefore, instructed that "[t]he jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Moore,* 108 F.3d 878, 881 (8th Cir.1997); *Perkins,* 94 F.3d at 436 (" 'The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt.' ") (quoting *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.), *cert. denied,* 505 U.S. 1211, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992)). Here, Mansker contends that his motion for judgment of acquittal should be granted because the government's evidence at trial would not permit a reasonable jury to find him guilty beyond a reasonable doubt of the offense the alleged conspiracy.

 In considering a motion for judgment of acquittal based on the sufficiency of the evidence, the court must "view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence." [3] *United States v. Basile,* 109 F.3d 1304, 1310 (8th Cir.), *cert. denied,* 522 U.S. 866, 118 S.Ct. 173, 139 L.Ed.2d 115 (1997); *accord United States v. Madrid,* 224 F.3d 757, 761–62 (8th Cir.2000) (stating that "in reviewing the District Court's denial of the motion for acquittal, we view the evidence in the light most favorable to the verdict and will reverse only if no reasonable jury could have found beyond a reasonable doubt that the defendant is guilty of the offense charged") (citation omitted); *United States v. Vig,* 167 F.3d 443, 447 (8th Cir. 1999) (observing that "[w]e review the district court's denial of a motion for judgment of acquittal based on the sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict."). The court can overturn a jury's verdict only if " 'a reasonable factfinder must have entertained a reasonable doubt about the government's proof' " of one of the essential elements of the crime charged. *United States v. Kinshaw,* 71 F.3d 268, 271 (8th Cir.1995) (quoting *United States v. Nunn,* 940 F.2d 1128, 1131 (8th Cir.1991)). Furthermore, "[t]his standard applies even when the conviction

---

3. In *Saborit,* 967 F.Supp. at 1140–43, the court discussed the existence of two apparently inharmonious lines of Eighth Circuit authority regarding the standard to be applied when considering a challenge to the sufficiency of the evidence to sustain a conviction. *Id.* (referring to *United States v. Baker,* 98 F.3d 330, 338 (8th Cir.1996), *cert. denied,* 520 U.S. 1179, 117 S.Ct. 1456, 137 L.Ed.2d 561 (1997)) (observing that if the evidence reasonably supports two conflicting hypotheses—guilt and innocence—the reviewing court must not disturb the jury's finding) and *United States v. Davis,* 103 F.3d 660, 667 (8th Cir.1996), *cert. denied,* 520 U.S. 1258, 117 S.Ct. 2424, 138 L.Ed.2d 187 (1997) (holding that " '[w]here the government's evidence is equally strong to infer innocence of the crime charged as it is to infer guilt, the verdict must

be one of not guilty ...' ' quoting *United States v. Kelton,* 446 F.2d 669, 671 (8th Cir. 1971)). Once again, the court observes, as it did in *Saborit,* that in the past decade, the Eighth Circuit Court of Appeals has overwhelmingly applied the *Baker* standard—that is, if the evidence reasonably supports two contrary theories, the reviewing court must not disturb the jury's determination. *Id.* (citing *Baker,* 98 F.3d at 338); *see also United States v. Butler,* 238 F.3d 1001, 1004 (8th Cir.2001) (noting apparent discrepancy and following *Baker* line of authority) (citing *United States v. Turner,* 157 F.3d 552, 556 n. 5 (8th Cir.1998)). Here, regardless of the standard applied in this case, the court concludes that the result as to the defendant's motion for judgment of acquittal would be the same.

rests entirely on circumstantial evidence." *United States v. Davis,* 103 F.3d 660, 667 (8th Cir.1996), *cert. denied,* 520 U.S. 1258, 117 S.Ct. 2424, 138 L.Ed.2d 187 (1997).

In addition to allowing a conviction to be based on circumstantial and/or direct evidence, the Eighth Circuit Court of Appeals has instructed that "[t]he evidence need not exclude every reasonable hypothesis except guilt." *United States v. Baker,* 98 F.3d 330, 338 (8th Cir.1996), *cert. denied,* 520 U.S. 1179, 117 S.Ct. 1456, 137 L.Ed.2d 561 (1997). The court can neither weigh the evidence nor assess the credibility of the witnesses; these tasks belong exclusively to the jury. *United States v. Ireland,* 62 F.3d 227, 230 (8th Cir.1995) (noting it is the jury's job to judge the credibility of witnesses and to resolve contradictions in evidence).

### 2. Sufficiency of the evidence

The indictment charges that, between about 1997 and continuing through February 2002, defendant Mansker conspired to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. The jury found Mr. Mansker guilty and indicated that he was responsible for 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.[4] In order to convict Mr. Mansker of this conspiracy, the government had to show beyond a reasonable doubt that: (1) between 1997 and February 2002, two or more persons reached an agreement or came to an understanding to commit the offense of distributing a mixture or substance containing a detectable amount of methamphetamine; (2) Mr. Mansker voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and (3) at the time Mr. Mansker joined in the agreement or understanding, he knew the purpose of the agreement or understanding. *See United States v. White,* 241 F.3d 1015, 1022 (8th Cir.2001) ("To convict a defendant of conspiracy, the government must prove beyond a reasonable doubt the following elements: (1) there was a conspiracy with an illegal purpose; (2) the defendant knew about the conspiracy; and (3) the defendant knowingly became a part of it.") (citing *United States v. Mosby,* 177 F.3d 1067, 1069 (8th Cir.1999) and *United States v. Bass,* 121 F.3d 1218, 1220 (8th Cir.1997)); *United States v. Jiminez–Perez,* 238 F.3d 970, 973 (8th Cir.2001) (same); *United States v. Holloway,* 128 F.3d 1254, 1257 (8th Cir.1997) ("To be guilty of conspiracy, a defendant must be shown to have knowingly entered into an agreement with at least one other person to violate the law."). Thus, the government had to prove that Mr. Mansker knowingly and voluntarily participated in an agreement to distribute methamphetamine. *See United States v. Parker,* 32 F.3d 395, 399 (8th Cir.1994).

A conviction for conspiracy "may be based on circumstantial as well as direct evidence." *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.1992); *Jiminez–Perez,* 238 F.3d at 973. This is so, because "knowledge frequently cannot be proven except by circumstantial evidence, and the determination often depends on the credibility of the witnesses, as assessed by the factfinder." *See id.* at 390. Once the government establishes the existence of a conspiracy, only slight evi-

---

**4.** The jury found that the defendant was responsible for 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. The other options on the verdict form were "50 grams or more, but less than 500, of a mixture or substance containing a detectable amount of methamphetamine," and "Less than 50 grams of a mixture or substance containing a detectable amount of methamphetamine."

dence is required to link a defendant to the conspiracy. *United States v. Womack,* 191 F.3d 879, 884 (8th Cir.1999); *see also United States v. Jenkins,* 78 F.3d 1283, 1287 (8th Cir.1996) ("Once the government establishes the existence of a drug conspiracy, only slight evidence linking the defendant to the conspiracy is required to prove the defendant's involvement and support the conviction."). This places a heavy burden on a defendant challenging the sufficiency of the evidence in a conspiracy case. *Id.; United States v. Madrid,* 224 F.3d 757, 761 (8th Cir.2000) ("A defendant challenging the sufficiency of the evidence in a conspiracy case has a heavy burden, as proof of the crime may rest on indirect or circumstantial evidence.") (citation omitted). Nevertheless, the evidence must be sufficient to meet the *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) reasonable doubt standard—that is, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* "To be a conspirator, it is not required that [Mansker] knew all the details of the conspiracy." *United States v. Causor–Serrato,* 234 F.3d 384, 387 (8th Cir.2000) (citing *United States v. Hernandez,* 986 F.2d 234, 236 (8th Cir.1993)).

In his motion for judgment of acquittal, Mansker attacks the credibility of all the government witnesses, arguing that each witness, except Mr. Mahler, was impeached on cross-examination and that the testimony of all the government's witnesses was inherently incredible because each was testifying pursuant to a cooperation plea agreement, received substantial assistance motions at his sentencing, and subsequently sought further sentencing reductions through the government's exclusive power to make a Rule 35 motion.[5]

---

5. At the time of sentencing, the government may make either or both substantial assistance motions. Absent one or both of these motions, the court must sentence a defendant within his or her Guideline range, except in extraordinary circumstances. Section 5K1.1 provides the following:

§ **5K1.1.** *Substantial Assistance to Authorities*

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1.

A § 3553(e) motion allows a district court to depart below the statutory mandatory minimum when a defendant has provided substantial assistance to the government. 18 U.S.C. § 3553(e). Both a 5K1.1 and a § 3553(e) motion must be made at the time of sentencing.

The Federal Rules of Criminal Procedure provide for further reductions in a defendant's sentence if the government moves under Rule 35. Rule 35 provides: "Upon the government's motion made within one year of sentencing, the court may reduce a sentence if: (A) the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person; and (B) reducing the sentence accords with the Sentencing Commission's guidelines and policy statements." FED. R. CRIM. P. 35(b).

It bears emphasis that each of these motions, which are a defendant's only means of

■ However, based on principles of co-conspirator liability, Mr. Mansker is "criminally liable for the substantive offenses committed by another conspirator within the scope and in furtherance of the conspiracy." *United States v. Rodger,* 100 F.3d 90, 91 n. 2 (8th Cir.1996) (per curiam) (citing *Pinkerton v. United States,* 328 U.S. 640, 647–48, 66 S.Ct. 1180, 90 L.Ed. 1489, (1946)). "In *Pinkerton,* the Supreme Court held that a party to a conspiracy may be responsible for the substantive offense of a co-conspirator 'when the substantive offense is committed by one of the conspirators in furtherance of the [conspiracy].' This is true even though the party has no actual knowledge of the offense as long as it could be 'reasonably foreseen as a necessary or natural consequence of the [conspiracy].' " *United States v. Martinez,* 958 F.2d 217, 219 (8th Cir.1992) (internal citations omitted) (quoting *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)). As the Eighth Circuit Court of Appeals recently explained in *U.S. v. Navarrete–Barron,* 192 F.3d 786 (8th Cir.1999):

> We have said that "[u]nder *Pinkerton,* each member of a conspiracy may be held criminally liable for any substantive crime committed by a co-conspirator in the course and furtherance of the conspiracy, even though those members did not participate in or agree to the specific criminal act." *United States v. Golter,* 880 F.2d 91, 93 (8th Cir.1989) (citations omitted).

> In order to convict Navarrete–Barron of possession with intent to distribute cocaine base under 21 U.S.C. § 841, the government must first prove that Garcia

knowingly or intentionally possessed 50 or more grams of cocaine base with intent to distribute. The government must then prove that Navarrete–Barron and Garcia were members of a conspiracy at the time of the possession, that the possession of the cocaine base was in furtherance of the conspiracy, and that Garcia's possession could have been reasonably foreseen by Navarrete–Barron as a natural outgrowth of the conspiracy. *See Pinkerton,* 328 U.S. at 647–48, 66 S.Ct. 1180, 90 L.Ed. 1489.

*Navarrete–Barron,* 192 F.3d at 792–93; *see also Davis,* 154 F.3d at 783 ("As outlined in the jury instructions, *Pinkerton* liability requires that a member of the conspiracy committed the offense in furtherance of the conspiracy at a time when the defendant was also a member of the conspiracy and that the offense was a reasonably foreseeable consequence of the unlawful agreement."); *United States v. Rodger,* 100 F.3d 90, 91 n. 2 (8th Cir.1996) (a co-conspirator is liable for an offense in furtherance of the conspiracy "unless that offense could not reasonably have been foreseen as a necessary or natural consequence of the conspiracy"); *United States v. Friend,* 50 F.3d 548, 554 n. 3 (8th Cir. 1995) (stating "the government must prove that Apker's possession of a silencer-equipped firearm could have been reasonably foreseen by Friend" and "We reject Friend's contention that the district court erred in refusing to substitute "was reasonably foreseen" for "could have been reasonably foreseen" in its instruction defining the elements of the Count IX offense. We approved the term used by the

---

escaping the oppressive confines of the United States Sentencing Guidelines, can be made exclusively by the United States Attorney's Office. Mr. Mansker's condemnation of the substantial assistance motions is not baseless—the Guidelines take nearly all of a sentencing court's discretion to determine the

length of a defendant's sentence out of the judge's hands and place it into the prosecutor's hands. The prosecutor is free to exchange that discretion for a convicted felon's cooperation in prosecuting others. That this scheme provides an overwhelming incentive to lie goes without saying.

district court as "fully comply[ing] with *Pinkerton's* requirements" in *[United States v.] Lucas,* 932 F.2d [1210], 1220[ (8th Cir.)], *cert. denied,* 502 U.S. 929, 112 S.Ct. 349, 116 L.Ed.2d 288 (1991), *and cert. denied,* 502 U.S. 1100, 112 S.Ct. 1186, 117 L.Ed.2d 429 (1992).), *vacated on other grounds,* 517 U.S. 1152, 116 S.Ct. 1538, 134 L.Ed.2d 643 (1996); *United States v. Lucht,* 18 F.3d 541, 554 (8th Cir.) (*Pinkerton* liability attaches where the offense ("could have been reasonably foreseen as a necessary or natural consequence of the conspiracy"), *cert. denied,* 513 U.S. 949, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994)).

 Viewing the totality of the evidence in the light most favorable to the government, as it must on a judgment of acquittal, the court concludes that the evidence is sufficient for the jury to have found that Mr. Mansker was guilty beyond a reasonable doubt of conspiracy to commit the charged offense—that is, distribution of methamphetamine. The government introduced the testimony of six co-conspirators—Kelly Mahler, Owen Rose, Shane Petersen, Shane Ehlers, Cory Derby, and Gary Buckholtz. Mr. Mahler testified that Mansker moved methamphetamine for him, beginning with ounce quantities in 1997 and quickly increasing to pound quantities once or twice per month. He estimated that he sold approximately 15 pounds of methamphetamine to Mansker from April until November of 1997. Furthermore, Mr. Mahler stated that the amount of methamphetamine that Mansker purchased was too great a quantity and his purchases were too frequent to be indicative of personal use.

Mr. Rose had a smaller role in the conspiracy than Mr. Mahler, who was a kingpin of the conspiracy. Mr. Mahler testified that Mr. Rose worked under Mr. Mahler's direction and delivered methamphetamine to buyers for Mr. Mahler. Mr. Rose's testimony regarding his role in the conspiracy corroborated Mr. Mahler's testimony, and Mr. Rose testified that he delivered methamphetamine from Mr. Mahler to Mr. Mansker for 3 to 4 months in 1997.

Mr. Petersen testified that he purchased ounce quantities of methamphetamine from Mr. Mansker "a couple different times." He testified that Mr. Mansker "fronted" him the drugs and that he paid Mr. Mansker after Mr. Petersen himself realized a profit from selling the methamphetamine. Mr. Petersen had met Mr. Mansker through a mutual friend, Mr. Ehlers, who also testified against Mr. Mansker. Mr. Ehlers was Mr. Mansker's former roommate and close friend. He testified that, during 1998 through the time he was arrested in 2000, he smoked methamphetamine with the defendant, shared methamphetamine with the defendant, sold methamphetamine to the defendant, and purchased methamphetamine from the defendant. In addition, Mr. Ehlers stated that Mr. Mansker acted as a "middle man" in the distribution of methamphetamine from Mr. Ehlers to Cloie Hegge, who was one of the cooperating witnesses the court excluded as a sanction for the government's failure to disclose exculpatory information, and from Ms. Hegge and Kevin Shook[6] to Mr. Ehlers.

Mr. Derby similarly testified that he used methamphetamine with Mr. Mansker and Mr. Ehlers. He also testified that, on Labor Day weekend of 2000, he was unable to obtain methamphetamine from his usual source and that, as a result, he purchased 1/4–1/2 ounce of methamphetamine

---

**6.** Kevin Shook was indicted in the District of Montana and subsequently pleaded guilty to a conspiracy on July 29, 2002.

from the defendant. Mr. Derby stated that Mr. Mansker obtained the methamphetamine on that occasion from Mr. Shook. In addition, Mr. Derby testified that he arranged a one-pound purchase on Mr. Mansker's behalf in the spring of 2000.

The government's final witness, Mr. Buckholtz, testified that he had used methamphetamine with the defendant and that, in 2000, he purchased one pound of methamphetamine from Mr. Mansker. But because the methamphetamine was mixed with rock salt and because Mr. Mansker refused to refund Mr. Buckholtz's money, Mr. Buckholtz never dealt with the defendant again.

The defendant cross-examined each of the witnesses, and it was made clear that each had a high stake—indeed, their liberty—in testifying against the defendant. Each witness conceded that the government made downward departure motions on his behalf, that he had received a substantial downward departure from his United States Sentencing Guideline range in his sentence, and that he was testifying in exchange for further sentencing reductions in the form of a Rule 35 motion. In addition, Mr. Mahler admitted that he had long suspected that his girlfriend, Ms. Hegge, and Mr. Mansker were involved in an affair and that he, therefore, strongly disliked the defendant and that he had even previously assaulted him because of this affair. The jury also heard evidence that Mr. Mahler had a personal vendetta against the defendant because of his affair with Ms. Hegge and that he invented and/or exaggerated the defendant's involvement in the conspiracy.

While the court may not have convicted the defendant based on the testimony of these cooperating witnesses alone, credibility determinations are the jury's exclusive province. *E.g., Ireland,* 62 F.3d at 230 (noting it is the jury's job to judge the credibility of witnesses and to resolve con-

tradictions in evidence). If the jury believed the witnesses' testimony, there was sufficient evidence to convict Mr. Mansker of the conspiracy charge. Moreover, the defendant's own testimony, coupled with that of his character witness's testimony, provided sufficient evidence to find him guilty beyond a reasonable doubt. Mr. Mansker called his friend and co-worker, Alex Bender, to testify. On direct examination, Mr. Bender readily admitted to using and occasionally sharing methamphetamine with the defendant. Mr. Mansker similarly admitted to using and sharing methamphetamine with Mr. Bender, as well as admitted to using with Mr. Ehlers, Mr. Derby, and Mr. Mahler. In addition, Mr. Mansker testified on direct examination that he purchased personal use quantities of methamphetamine from Mr. Mahler. The totality of the defendant's testimony alone was sufficient evidence to convict Mr. Mansker, especially when considered in conjunction with the government witnesses' testimony, because it is not the exchange of money, but rather is the distribution of methamphetamine, that makes Mr. Mansker's conduct unlawful. *See United States v. Fregoso,* 60 F.3d 1314, 1325 (8th Cir.1995) (rejecting argument that defendant was not involved in the conspiracy because he merely freely gave his cocaine to other individuals and did not sell any for profit and stating that "[n]o 'sale' is required to violate [21 U.S.C. § 841(a)(1) ]. Brown 'distributed' cocaine within the meaning of the statute when he freely gave cocaine to Cox and Cymbalista on numerous occasions...."). The jury was presented with sufficient evidence to find beyond a reasonable doubt that Mr. Mansker was a part, though a relatively insignificant part, of the conspiracy, and "[a] defendant convicted of conspiracy is properly held accountable for all reasonably foreseeable acts and omissions of any co-conspirator taken in furtherance of the

conspiracy." *United States v. Atkins,* 250 F.3d 1203, 1211–12 (8th Cir.2001).

Viewing the evidence in such a light, and giving the government the benefit of all reasonable inferences, the court concludes that there is sufficient evidence in the trial record to support the jury's conviction of Mr. Mansker on the charge of conspiracy. It was the jury's function to evaluate the government witnesses' credibility and to weigh their testimony against any motives to fabricate or exaggerate Mr. Mansker's involvement in the conspiracy. Therefore, the court will not overturn the jury's verdict of guilt on the charge of conspiracy and acquit Mr. Mansker. *See United States v. Surratt,* 172 F.3d 559, 565 (8th Cir.1999) ("It is not necessary for the evidence before the jury to rule out every reasonable hypothesis of innocence. It is enough that the entire body of evidence be sufficient to convince the fact-finder beyond a reasonable doubt of the defendant's guilt.") (citing *United States v. Noibi,* 780 F.2d 1419, 1422 (8th Cir.1986)). Accordingly, the court denies Mr. Mansker's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

### C. Motion for New Trial

Mr. Mansker has also moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Because the standards governing motions for new trial differ substantially from those applied to motions for judgment of acquittal, the court will begin its analysis by discussing those standards and will then turn to its consideration of Mr. Mansker's motion.

### 1. Standards applicable to motions for new trial

In *Saborit,* this court also had occasion to consider in some detail the standards applicable to motions for new trial. *Saborit,* 967 F.Supp. at 1144–45. Rather than repeat that discussion in its entirety here,

the court will again set forth the highlights of these standards.

Federal Rule of Criminal Procedure 33 provides in relevant part as follows: "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." FED. R. CRIM. P. 33. District courts have broad discretion in passing upon motions for new trial, and such rulings are subject to reversal only for a clear abuse of discretion. *See United States v. Wilkins,* 139 F.3d 603, 604 (8th Cir.1998); *United States v. Brown,* 108 F.3d 863, 866 (8th Cir.1997); *United States v. Blumeyer,* 62 F.3d 1013, 1015 (8th Cir.1995), *cert. denied,* 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 212 (1996).

A court evaluates a Rule 33 motion from a different vantage point than it evaluates a Rule 29 motion for judgment of acquittal. *Ortiz,* 40 F.Supp.2d at 1082. Indeed, "[a] district court's power to order a new trial is greater than its power to grant a motion for acquittal." *United States v. Ruiz,* 105 F.3d 1492, 1501 (1st Cir.1997); *accord United States v. Bennett,* 956 F.2d 1476, 1481 (8th Cir.1992) ("This narrowly constricted power of review [applicable to motions for judgment of acquittal] is in contrast to the district court's broad discretion in ruling upon a motion for new trial."); *United States v. A. Lanoy Alston, D.M.D., P.C.,* 974 F.2d 1206, 1211 (9th Cir.1992) ("A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal."). In assessing whether a defendant is entitled to a new trial on the ground that the verdict is contrary to the weight of the evidence, "the district court weighs the evidence and evaluates anew the credibility of the witnesses to determine if a miscarriage of justice may have occurred." *Davis,* 103 F.3d at 668; *accord United*

*States v. Misle Bus & Equip. Co.*, 967 F.2d 1227, 1232 (8th Cir.1992); *United States v. Brown*, 956 F.2d 782, 786 (8th Cir.1992). As the United States Court of Appeals for the Eighth Circuit has explained:

> "When a motion for a new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is whether [the defendant] is entitled to a new trial. In assessing the defendant's right to a new trial, the court must weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." *United States v. Lincoln*, 630 F.2d [1313,] 1316 [(8th Cir. 1980)]. The court will only set aside the verdict if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.

*United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir.1987). The authority to grant new trials, however, "should be used sparingly and with caution." *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980). Having examined the appropriate standards of review, the court turns now to Mr. Mansker's motion for new trial.

### 2. Sufficiency of the evidence

■ Mr. Mansker moved for a new trial on the ground that the verdict is contrary to the evidence. "A motion for a new trial should be granted if there is insufficient evidence to support the verdict." *United States v. Willis*, 277 F.3d 1026, 1030–31 (8th Cir.2002) (citing *Larson v. Farmers Coop. Elevator of Buffalo Ctr.*, 211 F.3d 1089, 1095 (8th Cir.2000)). The decision to grant or deny a motion for new trial based on the weight of the evidence is within the sound discretion of the trial court. *United States v. Huerta–Orozco*, 272 F.3d 561, 565 (8th Cir.2001); *accord United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir.1997). While the court's discretion is quite broad, there are limits to

it. Where a defendant moves for a new trial on the grounds that the verdict is contrary to the weight of the evidence, the district court should grant the motion if:

> "the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred. . . . In making this determination, the court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses."

*Huerta–Orozco*, 272 F.3d at 565 (quoting *United States v. Lacey*, 219 F.3d 779, 783–84 (8th Cir.2000)). In *Huerta–Orozco*, the Eighth Circuit Court of Appeals went on to note that:

> If, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, [the district court] may set aside the verdict, grant a new trial, and submit the issues for determination by another jury."

*Huerta–Orozco*, 272 F.3d at 565 (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir.1980)).

Although the court has reviewed and considered the record as a whole, it will not reiterate the testimony presented at trial. As noted above, all of the government's witnesses had an overwhelming incentive to lie—indeed, their liberty was at stake. The defendant argues that their testimony was "purchased" by the government with its power to punish and that, therefore, it is inherently unreliable. Because the government presented no evidence other than the testimony of its cooperating witnesses, each of whom clearly had credibility concerns, Mr. Mansker contends that he is entitled to a new trial. Moreover, he argues that, at best, the

government proved the distribution of 85.05 grams of methamphetamine, while the jury found Mr. Mansker responsible for 500 grams or more.

The court concluded earlier, regarding Mr. Mansker's motion for judgment of acquittal, that there was sufficient evidence presented by the government to support Mr. Mansker's conviction. While that result was reached when construing the evidence in the light most favorable to the guilty verdict, giving the government all reasonable inferences that may be drawn from the evidence, when applying the less restrictive standard for review applicable to motions for new trial, the court concludes that the evidence does not weigh heavily enough against the verdict for the court to conclude that a miscarriage of justice may have occurred in this case, though this case presents an extraordinarily close call.

The court had credibility concerns with each witnesses' testimony and is troubled that their testimony provided the sole basis of Mr. Mansker's conviction. Each witness had a huge incentive to lie; none originally named Mr. Mansker as a dealer when they first provided information to law enforcement; all received substantial sentence assistance motions because of their cooperation; and each pegged Mr. Mansker as a dealer at trial in the hopes of receiving a Rule 35 motion to reduce their sentence even further. This is a brief summary of the evidence that convicted Mr. Mansker, and none of it was corroborated by physical evidence.

The haunting question here is: Would Mr. Mansker have been convicted or even charged if it were not for the specter of substantial reductions in the sentences of the six cooperating government witnesses? The structure of the Sentencing Guidelines, with their extraordinarily heavy emphasis on drug quantity, Draconian sentencing ranges in virtually all drug cases, especially methamphetamine cases, and with their institutionalization of potentially substantial reductions in sentences for cooperating against others, have, in my view, brought enormous pressure on cooperators to stretch the truth and to provide previously unknown and all too often false information to federal prosecutors in exchange for 5K1.1. and section 3553(e) substantial assistance motions. Indeed, a substantial assistance motion under section 3553(e) is the only way, short of a presidential pardon, that a defendant can escape from congressionally mandated mandatory minimum sentences. Thus, I fear that our federal criminal justice system has become seriously infected with perjurious testimony by prevaricating government cooperators.

While I continue to have great faith in the Sixth Amendment and the jury system, ferreting out perjury among drug cooperators is no easy task for a jury or, for that matter, even for an experienced federal trial court judge. This is especially true in singularly historical cases like this one, where there is lacking a scintilla of corroborating physical evidence—as demonstrated by the totally barren evidence table at the conclusion of the government's case and the trial.

Thus, while I have serious reservations and concerns that the Sentencing Guidelines' enormous pressure on cooperators may have determined Mr. Mansker's fate here, I cannot say with the degree of confidence I need that a miscarriage of justice was done. Therefore, but not without serious hesitation or reservation, I reluctantly deny Mr. Mansker's motion for new trial on the ground that the jury verdict is against the weight of the evidence.

### III. CONCLUSION

Having reviewed the trial record, the court affirms its previous ruling that the

government's nondisclosure of interview reports constituted a *Brady* rule violation under the circumstances of this case where the theory of defense rested on the defendant's argument that the cooperating witnesses pleaded guilty, received substantial assistance motions, were sentenced, and then sought further reductions of their sentences by fabricating testimony about the defendant's involvement in a conspiracy to distribute methamphetamine. However, the court excluded those witnesses whose interview notes were not provided and finds that its order requiring the government to provide all interview notes and its exclusion of three witnesses prevented any prejudice to the defendant. The court, therefore, declines the defendant's invitation to impose dismissal with prejudice as a sanction for the government's *Brady* violation. The defendant's motion for sanctions is **denied**.

In addition, the court concludes, based upon its review of the evidence, and viewing the evidence in the light most favorable to the government, that Mr. Mansker has not proven that his conviction was secured through inherently incredible testimony. The court further finds that a reasonable jury could have found that the defendant, Mr. Mansker, knowingly and voluntarily participated in an agreement with other persons to commit the offense of distribution of methamphetamine. Consequently, the court **denies** Mr. Mansker's motion for judgment of acquittal.

And finally, the court concludes that, when applying the less restrictive standard for review applicable to motions for new trial, Mr. Mansker has not demonstrated that his conviction was secured through perjured testimony. The court finds that a reasonable jury could have found that Mr. Mansker knowingly and voluntarily participated in an agreement with other persons to commit the offense of distribution of methamphetamine. Consequently,

the court denies Mr. Mansker's motion for new trial.

**IT IS SO ORDERED.**